1 BRUCE A. KILDAY, ESQ., SBN 66415
Email: bkilday@akk-law.com
2 DERICK E. KONZ, ESQ., SBN 286902
Email: dkonz@akk-law.com
3 J. SCOTT SMITH, ESQ., SBN 119233
Email: ssmith@akk-law.com
4
**ANGELO, KILDAY & KILDUFF, LLP**
5 Attorneys at Law
601 University Avenue, Suite 150
6 Sacramento, CA  95825
Telephone:  (916) 564-6100
7 Telecopier:  (916) 564-6263

8
Attorneys for Defendants CITY OF REDDING, CHRISTOPHER STAUP, EDWARD
9 McGINNIS and KYLE CORRIGAN

10

11 **UNITED STATES DISTRICT COURT**

12 **EASTERN DISTRICT OF CALIFORNIA**

13

14 CINDY ADAMS as Personal Representative to ) Case No.: 2:20-cv-01610-TLN-DMC
the Estate of JESSE ADAMS, and individually,)
15                                            ) **REPLY TO OPPOSITION TO**
                            Plaintiff,        ) **DEFENDANTS CITY OF REDDING,**
16                                            ) **CHRISTOPHER STAUP, EDWARD**
                                             ) **McGINNIS AND KYLE CORRIGAN'S**
17           vs.                             ) **MOTION FOR SUMMARY JUDGMENT**
                                             )
18 CITY OF REDDING, et al.,                  )
                                             ) **DATE:         April 4, 2024**
19                                            ) **TIME:         2:00 P.M.**
                            Defendants.       ) **DEPT:         2, 15th Floor**
20                                            )
                                             )
21 _____)

22

23

24

25

26

27

28
---

## I.  INTRODUCTION

Plaintiff Cindy Adams' ("Plaintiff") opposition to the pending motion for summary judgment ignores virtually all of the evidence in this case to portray what largely amounts to a fantasy as to the events that led up to the shooting of Jesse Adams ("Adams.")  In doing so, she does more to highlight why summary judgment is necessary in this case as it is apparent that she will do nothing more at trial than rely on bare allegations without any reference to supporting evidence.  As Plaintiff would portray the events that Adams had been fully compliant with Officers instructions, only put the car into reverse and attempted to flee because he had been pepper sprayed, and after colliding with an occupied patrol car that Adams was, again, just sitting peacefully in when Officer Christopher Staup ("Staup") shot Adams in a fit of anger because Adams had struck a vehicle occupied by Staup's wife.  Opp. p. 1.  Instead, Plaintiff simply ignores what evidence there is.  The only evidence in this case clearly shows that Adams was trying to get his car into gear before he was sprayed, that he then succeeded and then drove his car head-on into an occupied police cruiser, narrowly missing an on-foot officer in the process; and that after he crashed he was again trying to get the car into gear, thereby necessitating immediate action.  In simple terms, Plaintiff's opposition lacks merit as it fails to establish an evidence-based triable issue of fact.

## II.  PLAINTIFF MISSTATEMENTS OF FACT

Plaintiff begins with the statement "that Officer Kyle Corrigan ("Corrigan") did not have suspicion to stop the Scion," and that "Corrigan then stopped the Scion merely because it did not activate its blinker and slowed down."  Opp. at 2.  This is a gross simplification.  Adams, who was driving a Toyota Scion was pulled over because he drove erratically by drifting out of a lane, suddenly veering back into the lane he drifted out of, and slowing so rapidly that Officer Corrigan was forced to slam on his breaks to avoid Adams.  See, Corrigan Depo. p. 40:8-41:25, Ex B to Smith Decl., ECF 36.    It turns out that Plaintiff was, in fact, high on Methamphetamine, Amphetamine, and Marijuana metabolites at the time.  Sincich Decl., ECF 40, ¶ 13, Ex. 13. Plaintiff claims that Officers are trained not to block a person's possible exit route when pulling a vehicle over.  Opp. at p.2-3, citing to PSUF 34-35.  However, the deposition testimony Plaintiff

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

relies on stands merely for the proposition that, for officer safety, when pulling a vehicle over, an officer should pull behind the vehicle at a safe distance. See, M. Montgomery Depo. p. 81:16-25, Ex. 12, to Sincich Decl. The remainder of the evidence cited in Plaintiff's Undisputed Facts 33 and 34 addressed high speed chases, an issue that does not exist in this case.

Plaintiff states that after deciding on a plan where the officers were going to remove the occupants of Adams' Vehicle, that Adams asked why he had been pulled over, implying that Officer Corrigan had never informed him of this. Opp. at 3. However, Officer Corrigan did tell Adams why he pulled him over when he first talked to Adams. Plaintiff states that Officer Corrigan tried to open the door to remove Adams, and when he couldn't, he threatened to break the window open. Opp. at p. 2, citing PSUF. Plaintiff ignores a critical set of facts contained in the testimony he cites. In particular, Officer Corrigan testified that he threatened to break out the driver's window after seeing Adams' hand on the gear lever appearing to try to put the car into gear. Corrigan Depo 84:23-86:3, Ex. 2 Smith Decl. At the same time, Officer Corrigan heard the engine start to rev loudly. *Id*. 85:20-25. Next, Plaintiff describes Officer Corrigan breaking out the window and pepper spraying Adams. All while ignoring the crucial fact that Adams appeared to be trying to put the car into gear. Opp. at 3.

After Adams drove the scion in reverse and up an embankment, then accelerated rapidly in the direction of the parked patrol cars, Plaintiff asserts that "Staup was behind Corrigan's Vehicle." Opp. at 4, citing PSUF 83-85. However, the video of the event does not show this at all. Instead, when carefully viewed, it shows that Officer Staup had to jump out of the way of the oncoming vehicle. See, Ex. 9 to Sincich Decl. Plaintiff next contends that Officer Staup shot Adams approximately ten to fifteen seconds after the crash. Opp. at 4. Again, Plaintiff's statement is inconsistent with the evidence cited. Officer McGinnis testified as follows "So the collision happens. I hear motors revving. I hear or I see the white lights as I'm approaching the rear of the vehicle. I hear a motor rev and a gunshot." McGinnis Depo. p. 88:5-88:7, Ex. 3 to Sincich Decl. Officer Corrigan testified that "I actually was able to almost completely close the distance between where I was standing and the rear of the Scion before the shot was fired, which would have taken some time to get there. I remember hearing Officer Staup yell something, but I don't remember

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

what actually -- I couldn't hear exactly what he was saying due to the sound of the metal screeching and the tires squealing.  Corrigan Depo. p 111:3-111:9, Ex. 1 to Sincich Decl.  Then looking at the video, it is apparent that it only took Officers Corrigan and McGinnis 2 to 3 seconds to close the distance to a point even with the rear of Adams' Vehicle.  Sincich Decl. Ex.9, 9:21-9:23.  Plaintiff also chooses to ignore all evidence as to why Staup shot Adams.  Namely that Adams was revving his engine, and was trying to put the car into reverse again, while simultaneously reaching for the floorboard.  See, Staup Decl. ¶ 13, ECF 36-4.

### III.  PLAINTIFF MISSTATES THE BURDENS ON SUMMARY JUDGMENT

Plaintiff misstates the relative burdens on summary judgment, and further misstates how those burdens are applied in a Fourth Amendment context.  Without discussing what the case actually holds, Plaintiff cites *Celotex Corp. v Catrett*, 477 U.S. 317, 322-323 for the proposition that the burden of establishing the absence of a triable issue of fact lies with the moving party.  Opp. at 5.  What *Celotex* famously held was that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.  In describing the moving party's burden, the court stated "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  That is, where a defendant has moved for summary judgment, it is the plaintiff that bears the ultimate burden of demonstrating the existence of a triable issue of fact, which Plaintiff has not done.

Citing to Justice Stevens' Dissent in *Brousseau v. Haugen*, 543 U.S. 194 (2004) as well as the opinions in *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), and *Wilkens v. Oakland*, 350 F.3d 949, 956 (9th Cit. 2003), Plaintiff argues that the reasonableness of an officer's actions is always a quintessential fact question that judges should not try to answer as a matter of law.  Opp. at 5.  None of these cases stand for such a broad proposition.  But more to the point, it ignores the

Supreme Court's more recent pronouncement that in the absence of a dispute concerning the historic facts that is "supportable by the record," the question of whether deadly force was warranted, "is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381, fn. 8. (2007)[1]; see also, *Lowry v. City of San Diego*, 858 F.3d 1248, 1254 (9th Cir. 2017) (en banc) ("In the absence of material factual disputes, the objective reasonableness of a police officer's conduct is a pure question of law.")

Plaintiff also chides Defendants for not having stated every fact cited in their brief in Defendants Separate Statement of Undisputed Fact.  PSUF, ECF 38-1, at pp. 2-8.  However, the Local Rules for this court state that a Statement of Undisputed Facts "shall enumerate discretely each of the specific material facts relied upon in support of the motion."  It does not require inclusion of all facts that put the evidence of material facts into context, only those that are material to the outcome of the lawsuit.  For example, Defendants discussed the Deposition testimony of Adams' mother that Adams told her he was leaving Washington because he feared being arrested for a third strike.  This is not a "material fact" because whether it is true or not is not determinative of the outcome of the lawsuit.  However, it does put the evidence into context by partially explaining why Adams appeared to be so desperate to escape.  Nowhere does Plaintiff point to a fact that is material to the outcome of this motion that was not included in the Statement of Undisputed Facts.

Lastly, Plaintiff relies on *Gonzales v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) (en banc) for the proposition that in deadly force cases, since the decedent cannot be a witness, a court should not blindly accept the officer's version of facts.  However, a key point of *Gonzales* was that because the Plaintiff was dead, the only witnesses to the events were the defendant officers.  *Id.* at 791.  That is not true here.  There were two passengers in Adams' vehicle and there were the two civilian ride along passengers in the police vehicles.  Further, there is the surveillance video showing Adams suddenly driving in reverse and then accelerating rapidly into Officer Staup's parked vehicle.  Plaintiff has either been unable or unwilling to rely upon the testimony of the two

---

[1] Of note is the fact that in making this statement, the Court was responding to a dissent by Justice Stevens, which makes Plaintiff's reliance on a quote from another Justice Stevens dissent even more problematic.

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

passengers, and all of the remaining evidence is entirely consistent with the Officers' version of the events. Even in *Gonzalez*, where the officers were the only witnesses, the court relied upon inconsistencies in the officers' testimony on a critical issue. *Id*. at 794-795. Yet, try as she might, Plaintiff has not pointed to any inconsistencies on facts critical to the outcome of the lawsuit. Rather, Plaintiff chooses to simply ignore evidence (Plaintiff's repeated attempts to put the car into gear), or flat mischaracterize it (claiming Officer Staup was behind Corrigan's car as Adams accelerated towards him.) In short, Plaintiff has done nothing to establish a triable material issue of fact.

## IV.  DISCUSSION ON THE MERITS

Plaintiff begins her argument on the merits with the same misstatements of law that she made with respect to her arguments with respect to summary judgment standards. Relying on *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003), Plaintiff argues that because the balancing test on a use of force case "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [it has] held on many occasions that summary judgment…in excessive force cases should be granted sparingly." Opp. at p. 8. However, as noted above, the courts have now made clear that the balancing test under *Graham v. Connor*, 490 U.S. 386, 395 (1989) is a pure question of law where the historic facts are not in dispute. *Lowry v. City of San Diego*, 858 F.3d at 1254. Thus, to the extent Plaintiff is suggesting it should be for a jury to make the balancing analysis, Plaintiff is wrong. Here, Plaintiff has not identified any genuine dispute of fact and she has thus not demonstrated the need for a trial.

Further, Plaintiff again argues that the motion for summary judgment should be denied merely to test the officer's credibility. Opp. at p. 8. However, to deny a summary judgment motion based on the credibility of an officer, that credibility must be "genuinely in doubt." *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016). In *Newmaker*, such doubt was found where the officers' version was "materially contradicted by evidence in the record." *Id*. In *Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019), doubts about the officer's credibility were based on significant differences between the officer's statements given within three hours after the incident, and the statements given after the officer consulted with an attorney. *Id*. at 1133. Specifically, in

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

the first statement, the officer "told homicide investigators that he did not see any weapons, and made no mention of feeling threatened by Nehad." *Id.* The later statement from the officer was that "he thought Nehad had a knife, that Nehad was "aggressing" the car, and that he thought Nehad was going to stab him." *Id.* In this case, Plaintiff has not pointed to any similar inconsistencies to what was at issue in *Newmaker* and *Nehad*. Indeed, Plaintiff has not pointed to any significant basis to question the Officer's credibility other than bare allegations.

A. **PLAINTIFF FAILS TO DEMONSTRATE A TRIABLE ISSUE OF FACT THAT OFFICER CORRIGAN OR OFFICER MCGINNIS USED EXCESSIVE FORCE**

Plaintiff first argues that Officer Corrigan is independently liable for using excessive force in breaking out Adams' window and using pepper spray. Plaintiff argues that "[p]rior to Corrigan's force, Adams was not assaultive; never attempted to strike anyone; never verbally threatened anyone; and the Scion did not move." Opp. at 8. Rather than dispute any material facts, Plaintiff simply ignores the evidence that Officer Staup observed Adams trying to put the car into gear, and then Officer Corrigan stepped forward and observed Adams violently shaking on the gear in an apparent desperate attempt to put the car into gear. See, Staup Decl. ¶ 9; Corrigan Depo. pp. 83:24-10, 84:23-86:5. While Plaintiff admits that "that at some point Adams was in the process of putting the car into gear," Plaintiff asserts that "[a] reasonable jury could find this inconsistent with the evidence and that Corrigan's statement lacks credibility. Logically, Adams had difficulty putting the vehicle into gear because of an after Corrigan pepper sprayed him." PRSUF 21-22. Plaintiff cites no evidence to question Corrigan's recollection, only the naked assertion that "logically" Adams would have had trouble putting the car into gear only after being sprayed. This is just a speculative allegation, nothing more. It is also inconsistent with the evidence that he was able to get the car into gear soon after being sprayed. Corrigan Depo. p. 96:13-22; Staup Decl. ¶ 10.

Plaintiff also ignores that it is undisputed that Corrigan warned Plaintiff "to put his hands back on the steering wheel, which Adams did for a brief moment. However, Adams quickly put his hand back on the shift lever, causing Corrigan to warn the driver that if he did not start to comply with instructions and come out of the vehicle, Officer Corrigan was going to break the window open." PRSUF 23. It is equally beyond dispute that Adams never complied with this

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

request.  Plaintiff also ignores the evidence that Officer Corrigan could hear the engine revving loudly when Adams was trying to put the car into gear.

In short, the situation Officer Corrigan faced was a suspect that may have been wanted on a felony warrant, who was actively trying to put his car into gear, which would have not only placed the officers in danger, but the passengers in Adams' car as well.  It was thus reasonable for Officer Corrigan to break out the driver's side window, and it was equally reasonable for him to use pepper spray when Adams fended off Officer Corrigan's attempts to stop Adams from putting the car into reverse.  Plaintiff has not pointed to a single case that would suggest that Officer Corrigan was constitutionally required to adopt some other tactic for addressing the situation created by Adams' conduct.

Citing to *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), Plaintiff argues that Officers Corrigan and McGinnis may be held liable as integral participants in the eventual shooting of Adams.  Opp. at p. 9.  Despite claiming that Plaintiff is not relying on the now rejected provocation rule, Opp. at p. 8, Plaintiff nonetheless relies on a provocation analysis by arguing that yelling at the occupants of the vehicle, failure to take appropriate cover, renders all of the officers responsible for Officer Staup's decision to shoot Plaintiff.  All of these allegations are aspects of the prior provocation rule, a now rejected argument that some tactical error provoked Adams into risking all of the Officers lives.  Nowhere does *Blankenhorn*, or any other case cited by Plaintiff, impose liability under these circumstances.  There, the officers jointly decided to arrest the plaintiff, and then gang talked him, while punching and kicking him.  *Blankenhorn*, 485 F.3d at 481.  Similarly, *Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1997), a case also relied upon by Plaintiff specifically rejected a jury instruction that applied liability where he deprivation of the rights is the result of a "team effort."  *Id*. at 294.  This instruction was held improper because the "team effort" theory removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct."  *Id*. at 295.

**B.   PLAINTIFF FAILED TO ESTABLISH THAT OFFICER STAUP'S USE OF DEADLY FORCE VIOLATED THE FOURTH AMENDMENT**

Plaintiff argues that "Adams obviously did not pose an immediate threat of death or serious

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

bodily injury to any person at the time of the shooting; Adams was surrounded; outnumbered against officers with superior training; the Scion was stopped; Adams was blinded by pepper-spray; Adams was unarmed; no one was in the path of the Scion; officers could have moved and sought cover if necessary." Opp. at p. 9. This argument is factually wrong. If Adams accelerated again into reverse, as he was trying to do at the time he was shot, he could easily have run over either Officer McGinnis or Officer Corrigan as neither of them were in a place of cover. See, Ex 9 to Sincich Decl. More importantly, at that moment, given his focus of not being hit, Officer Staup did not know if his fellow officer had been hit or were disabled. Staup Decl. ¶ 14. Further, Plaintiff completely ignores the risk to the passengers of Adams' vehicle as well as the risks to the civilian ride alongs inside the patrol cars. Adams had already risked one head on collision, so it was likely that Adams would try again if he could get the car into gear, which risked all of the passengers in the various vehicles with being injured in a serious head-on collision.

Further, Plaintiff placed great emphasis on the fact that at the moment Adams was shot, his vehicle was stopped, "and Staup did not even see Adams put the Scion in reverse." Opp. at 10. Plaintiff appears to suggest that Officer Staup could only fire if Adams were to succeed in putting the vehicle in reverse and start moving again. *Id*. However, this would require that Officer Staup wait until he was forced to shoot at a moving vehicle. As Plaintiff recognizes "shots fired at a moving vehicle are rarely effective," Opp. at p. 4, and "[d]eadly force against the driver of a vehicle should be avoided because it can cause the driver to lose control and crash, causing unjustifiable harm." *Id*. Therefore, if there was an immediate and substantial risk that Adams would get the car into gear and start moving again, the better option would be to prevent him from doing so, before he becomes a moving target with passengers in the line of fire. Clearly, such a risk existed. Officer Staup observed Adams desperately trying to put the vehicle into gear, and Plaintiff offers no evidence to dispute this. Plaintiff claims Officer Staup should have issued a warning, but Adams had shown no willingness to heed Corrigan's prior warnings, and Staup was faced with a situation where in any moment, Adams could get the car into gear and start accelerating backwards.

Plaintiff argues that "Defendants ignored numerous less-intrusive alternatives, such as continuing to use verbal commands, and maneuvering to gain more distance and time." Opp. at

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

11.   Again, Plaintiff ignores the totality of the evidence.  Nowhere does she suggest where the officers could have maneuvered to be safe, and she ignores the obvious danger to the passengers of the police vehicles and Adams vehicle.  It seems that Plaintiff is suggesting that Staup should have remained behind Officer Corrigan's vehicle (which makes no sense since Officer Corrigan's Vehicle might be the next to get hit) and then watched quietly as Adams repeatedly bashes his car into the occupied police vehicles.  Plaintiff has not cited a single case that suggests that allowing a person to blithely go about harming others is constitutionally mandated.

**C.    QUALIFIED IMMUNITY.**

Given the foregoing it seems obvious that qualified immunity protects the officers in this case.  Plaintiff relies on a number of pre-2011 cases standing for the proposition that a case nearly on point is not needed to defeat qualified immunity.  Opp. at 12-13.  However, in 2011, the Supreme Court clarified that while "[w]e do not require a case directly on point," nonetheless "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); See, also, *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (applying same standard to excessive force).  Plaintiff has not pointed to a single case that places the constitutional question "beyond debate."  Plaintiff offers no evidence creating a material fact dispute.  Plaintiff cited a number of cases that it is unreasonable to shoot at a slow-moving vehicle when it would be easy for an officer to step out of the way, Opp. at 15, ignoring that in none of those cases was there an immediate risk of harm that the decedent was going to ram his vehicle into occupied vehicles, or put other officers in danger.

As noted by Defendants' moving papers, the Ninth circuits decisions in *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) and *Monzon v. City of Murrieta*, 978 F.3d 1150, 1153 (9th Cir. 2020) are far closer to this case.  In each of those cases, the driver of a vehicle had demonstrated reckless disregard for the safety of others, and in each of those cases, the driver was attempting to accelerate in a manner that would have put others in danger.  Plaintiff does not offer a meaningful distinction for either case.  She argues that in those cases the driver had not shown acts of compliance whereas here, Adams had complied with Corrigan's initial commands.  Opp. at. 16.  This ignores that Adams stopped complying entirely once he started trying to get his vehicle

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT

1    into gear.  Any previous compliance had no bearing on the situation Officer Staup faced.

2    **D.    PLAINTIFF'S MONELL CLAIMS LACK MERIT**

3           Plaintiff makes two arguments for municipal liability in this case.  The first is that the City

4    ratified the Officer's conduct, Opp. at 18, and that the City custom of failing to terminate, or even

5    discipline, any officers in the last 10 years in response to that officer's use of force.  Opp. at 19.

6    While Plaintiff offers criticisms of the City's policies, Plaintiff does not describe how those

7    criticisms are of a constitutional import. Opp. at 19.  There can be no claim of ratification here.

8    ""[W]hen a subordinate's decision is subject to review by the municipality's authorized

9    policymakers, they have retained the authority to measure the official's conduct for conformance

10   with their policies [and] [i]f the authorized policymakers approve a subordinate's decision and the

11   basis for it, their ratification would be chargeable to the municipality because their decision is

12   final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Here, the city did not investigate

13   this shooting alone, rather an investigation was performed by the Sherriff's department.  Further

14   any findings were based on the officers' version of events, and as Plaintiff has repeatedly argued

15   in this case, her claim is based on the theory that those officers' versions are not to be believed.

16   There is no evidence offered to suggest the City ratified Plaintiff's unsupported version of the

17   events.

18   **E.    STATE LAW CLAIMS**

19          For all of the reasons stated above, Plaintiff has failed to establish a triable issue of fact as

20   to Plaintiff's state law claims. All Plaintiff has done is repeat her unsupported accusations that are

21   discussed above, Opp. at 20, and there is no need for further discussing them here.

## V.  CONCLUSION

23          For the reasons stated above, and in Defendants moving papers, Defendants respectfully

24   request that their motion for summary judgment be granted.

25   Dated:  February 26, 2024                    ANGELO, KILDAY & KILDUFF, LLP

26                                                          */s/ J. Scott Smith*
                                                      By:_____
27                                                          J. SCOTT SMITH
                                                          Attorneys for Defendants
28

REPLY TO OPPOSITION TO DEFENDANTS CITY OF REDDING, CHRISTOPHER STAUP, EDWARD
McGINNIS AND KYLE CORRIGAN'S MOTION FOR SUMMARY JUDGMENT