UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY ADAMS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF REDDING, et. al.,<br><br>Defendants. | No. 2:20-cv-01610-TLN-DMC<br><br>**FINAL PRETRIAL ORDER**<br><br>Trial Date: September 14, 2026<br>Time: 9:00 a.m. |

The Court held a Final Pretrial Conference on July 9, 2026. (ECF No. 64.) Attorneys Dale Galipo, Marcel Sincich, and Jeffrey Mikel appeared for Plaintiff. Attorney Robert Ferrier appeared for Defendants. After the hearing, the Court makes the following findings and orders:

**I.    JURISDICTION / VENUE**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is appropriate in the Eastern District of California, Sacramento Division, under 28 U.S.C. § 1391.

**II.    JURY OR NON-JURY TRIAL**

The parties demand a jury trial. Accordingly, this matter shall be tried before a jury. The Court will empanel **eight (8) jurors**.

///

1

III.    **DATE AND LENGTH OF TRIAL**

Trial is scheduled for **Monday, September 14, 2026**.  The Court will set aside **seven (7) days** for trial.

IV.    **TIME LIMITS FOR OPENINGS, CLOSINGS, AND REBUTTAL**

Plaintiff and Defendants will each have **thirty (30) minutes** for opening statements.  Plaintiff will have **one (1) hour** for closing and **thirty (30) minutes** for rebuttal.  Defendants will have **one (1) hour** for closing.

V.    **UNDISPUTED FACTS**

The following facts are undisputed by the parties:

1.  This officer-involved shooting incident occurred on December 22, 2019, at approximately 3:15 a.m., in an empty parking lot of 2174 Pie Street, Redding, California.

2.  Defendant Officers Kyle Corrigan, Christopher Staup, and Edward McGinnis were acting under the color of law during the incident.

3.  Officers Kyle Corrigan, Christopher Staup, and Edward McGinnis were acting within the course and scope of their employment during the incident with Defendant City of Redding.

4.  Officer Staup and Officer McGinnis each had a ride-along in their respective vehicles during the incident.

5.  Decedent Jesse Adams was driving a White Toyota Scion during the incident.

6.  The Scion had a front passenger and a rear driver's side passenger.

7.  Officer Corrigan was not responding to a serious or violent crime.

8.  Officer Corrigan had no information that the Scion was stolen.

9.  Officer Corrigan had no information that anyone in the Scion had ever harmed any person.

10. This was not a dangerous pursuit, Mr. Adams did not run any stop signs or stop lights, did not drive on the wrong side of the road or at high speeds.

11. After Officer Corrigan activated his lights, Mr. Adams immediately yielded and turned into a parking lot, which Officer Corrigan viewed as an act of compliance.

12. There were no other civilian cars in the parking lot.

13. Mr. Adams parked the Scion in a parking stall.

14. Officer Corrigan asked to see Mr. Adams' license, registration, and insurance.

15. Mr. Adams and the front passenger began looking for the items requested.

16. The front passenger handed Mr. Adams the documents and Mr. Adams handed them to Officer Corrigan, which Officer Corrigan recognized as another act of compliance.

17. Officer Staup and Officer McGinnis arrived within a minute of each other.

18. Officer Corrigan's vehicle was parked on the north side of the lot facing west, a couple of car lengths from the Scion.

19. Officer Staup's vehicle was parked left and slightly behind Officer Corrigan's vehicle.

20. Officer McGinnis' vehicle parked left of Staup's vehicle next to the building.

21. The officer vehicles blocked the exit of the parking lot.

22. Officer Corrigan contacting the driver, Officer McGinnis contacting the rear passenger, and Officer Staup contacting the front passenger from the passenger side.

23. Mr. Adams repeatedly asked, "What is this for, why are you stopping me?"

24. Officer Corrigan told Mr. Adams to do what he was told.

25. Mr. Adams put his hands up on the driver's wheel as instructed, which Officer Corrigan saw as another act of compliance.

26. Officer Corrigan tried to open the driver's door.

27. Within two minutes of approaching the Scion, Officer Corrigan intentionally broke the front driver's window with his baton, shattering the glass onto Mr. Adams.

28. With Mr. Adams left wrist still on the steering wheel, Officer Corrigan reached into the Scion and grabbed Mr. Adams intending to pull him out through the broken window.

29. After Officer Corrigan grabbed Mr. Adams, Officer Corrigan intentionally deployed a several-second burst of pepper spray six inches from Mr. Adams' face, including his eyes, nose, and mouth.

30. Officer Staup knew Officer Corrigan had deployed pepper spray at Mr. Adams after he broke the window.

31. Mr. Adams had not been assaultive, never attempted to punch or kick any officer or

person, and never verbally threatened any officer or person.

32. Officer Staup went around the back of the Scion to the driver's side.

33. All three officers were on the driver's side of the car prior to the Scion moving backwards.

34. The Scion backed up about two car lengths arching to the west.

35. No officer was in the path of the Scion as it went in reverse.

36. No officer was touched or hit by the Scion when it went in reverse.

37. The Scion stopped at the embankment.

38. Officers Corrigan and McGinnis then moved to the west of the lot, which is to the right of the Scion.

39. After the Scion stopped at the embankment, Officer Staup immediately moved towards the passenger door to his vehicle where his ride-along was seated.

40. The Scion was on the embankment for a few seconds before it moved again.

41. The Scion drove forward and left towards the exit of the parking lot, then impacted Officer Staup's vehicle.

42. The airbags in Mr. Adams' car deployed.

43. No officer was touched or hit by the Scion when it went forward.

44. Officer Staup intentionally used deadly force when he fired his weapon at Mr. Adams.

45. Officer Staup fired a single shot that struck Mr. Adams.

46. Staup did not give any commands or warnings to Mr. Adams before using deadly force.

47. The Scion was stationary and not moving when Officer Staup used deadly force.

48. Officers had no information that Mr. Adams owned a firearm and had no information whether there was a firearm in the vehicle during the incident.

49. The 34-year-old Mr. Adams died on December 22, 2019.

50. Mr. Adams was shot in the chest from the driver side of the Scion.

51. Mr. Adams died as a result of an intermediate range penetrating gunshot wound of the chest.

52. The entrance of the gunshot was to the left upper chest and the trajectory was front to back, left to right, and downward. There was no exit wound.

4

53. Mr. Adams had sharp and blunt force injuries to the face including small incised wounds, minor abrasions, contusions and lacerations, and had minimal blunt force injuries of the extremities.

54. Mr. Adams was harmed, injured, and died as a result of this incident.

55. The Plaintiff is Lucinda "Cindy" Adams, the mother of Mr. Adams and his successor in interest, seeking both survival damages on behalf of Mr. Adams including for his pre-death pain and suffering and loss of life, and seeks wrongful death damages for her lifelong loss of her son including his love, companionship, comfort, support, and care.

## VI.    **DISPUTED FACTUAL ISSUES**

The following facts are disputed by the parties:

1. When the Scion moved forward, no officer was in the path of the Scion.

2. Whether Officers Staup and Corrigan used excessive force.

3. Whether the Defendant Officers used unreasonable force under state law.

4. Whether the City of Redding ratified the officers' use of excessive force.

5. Whether the City of Redding failed to adequately train it officers in the use of force, de-escalation, and tactics.

6. Whether the City of Redding maintained an unconstitutional custom, practice, or policy with regard to the use of force, de-escalation, and tactics.

7. Whether the use of the baton was excessive or unreasonable.

8. Whether grabbing Mr. Adams was excessive or unreasonable.

9. Whether the use of the pepper spray was excessive or unreasonable.

10. Whether the use of deadly force was excessive or unreasonable.

11. Whether it was feasible to give a warning prior to each use of force.

12. Whether there were other reasonable options.

13. Whether Jesse Adams had the ability, opportunity, and apparent intent to immediately causing death or serious bodily injury at the time that Officer Staup used deadly force against him.

14. Whether Officer Staup acted with reckless disregard for Mr. Adams right to be free from

excessive force.

15. The nature and extent of the damages for Plaintiff and Decedent.

16. Officer Corrigan stopped the Scion because it drifted back and forth across the roadway, making brief jerky movements.

17. Officer Corrigan believed that the driver might be under the influence.

18. Officer Corrigan noted signs that Mr. Adams might be intoxicated, including slurred speech, squinted eyes and movements that appeared uncoordinated.

19. When the plate for the car was run, it came back associated to Mr. Adams who had an outstanding warrant for felony burglary.

20. Mr. Adams could not provide a driver's license and identified himself as "McGuiness." He spelled this name differently on successive occasions.

21. Officer McGuiness instructed Mr. Adams to turn off the car and put his hands on the steering wheel.

22. Mr. Adams also rolled up the windows on the car.

23. Mr. Adams took his hand off the steering wheel and lowered it to the center console and then the gear shift.

24. Ofc. McGuiness raised his firearm, pointed it at Mr. Adams and told him that if he put the car in gear that he would be shot.

25. Mr. Adams pushed the gearshift of the car back and forth.

26. Officers repeatedly told Mr. Adams to take his hands off of the gear shift.

27. Mr. Adams grabbed Officer Corrigan's wrist.

28. Before shots were fired, Officer McGinnis saw the Scion's reverse lights come on.

29. Officer Staup observed Mr. Adams bent forward toward the floorboards of the Scion.

30. On the floorboard of the Scion was a large amount of cash and a Glock Model 22 forty caliber handgun. There were empty holsters on the floorboard and in the passenger side door.

## VII.    DISPUTED EVIDENTIARY ISSUES AND MOTIONS *IN LIMINE*

The Court sets the filing deadline for motions *in limine* as **August 24, 2026**.  Opposition

briefs are due by **August 31, 2026**.  Reply briefs are due by **September 8, 2026**.  A hearing on the motions *in limine* will take place on **September 14, 2026 at 9:00 a.m**. in Courtroom 2.

## VIII.   <u>RELIEF SOUGHT</u>

Plaintiff seeks compensatory damages for the violation of Plaintiff's and Decedent's rights, injuries, harm and damages caused by Defendants including for Cindy Adams's deprivation of life-long love, companionship, comfort, support, society, care, and sustenance of her son Jesse Adams, and Decedent Jesse Adams' pre-death pain and suffering, loss of enjoyment of life, loss of opportunity of life, and loss of life in an amount to be determined by the jury. Plaintiff seeks costs and interests.  Plaintiff seeks punitive damages against Defendant Officers Christopher Staup and Kyle Corrigan in an amount to be determined by the jury.  Plaintiff seeks reasonable statutory attorneys' fees pursuant to 42 U.S.C. §1983 and Cal. Civ. Code §52.1.

## IX.   <u>POINTS OF LAW</u>

The parties shall alert the Court to disputes about the applicable law and legal standards. Trial briefs addressing these points more completely shall be filed with this Court no later than **fourteen (14) days** prior to the date of trial in accordance with Local Rule 285.

## X.   <u>ABANDONED ISSUES</u>

Plaintiff does not abandon any issues raised in the pleadings at this time.

## XI.   <u>WITNESSES</u>

The parties' lists of prospective witnesses are memorialized in the Joint Pretrial Conference Statement (ECF No. 57) and are incorporated herein.

A.      No other witnesses will be permitted to testify unless: (1) the party offering the witness demonstrates that the witness will testify for the purpose of rebutting evidence that could not be reasonably anticipated by the filing date, or (2) the witness was discovered after the filing date and the proffering party makes the showing required in section B below.

B.      Upon the post-pretrial discovery of witnesses, counsel shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so that the Court may consider at trial whether the witnesses shall be permitted to testify.  The evidence will not be permitted unless: (1) the witnesses could not reasonably have been discovered prior to pretrial;

(2) the Court and opposing counsel were promptly notified upon discovery of the witnesses; (3) if time permitted, counsel proffered the witnesses for deposition; and (4) if time did not permit, a reasonable summary of the witnesses' testimony was provided by opposing counsel.

## XII.    **EXHIBITS**

The parties' lists of proposed exhibits are memorialized in the Joint Pretrial Conference Statement (ECF No. 57) and are incorporated herein.  The parties are ordered to meet and confer and, if possible, stipulate to the authenticity and admissibility of exhibits prior to trial.

The parties shall file a Final Joint Exhibit List no later than **September 8, 2026**.  The list should indicate which exhibits are stipulated and those to which any party objects.  Plaintiff's exhibits shall be listed numerically.  Defendants' exhibits shall be listed alphabetically.  The parties shall use the standard exhibit stickers provided by the Court Clerk's Office: pink for Plaintiff and blue for Defendants.  After three letters, note the number of letters in parenthesis (*i.e.*, "AAAA(4)") to reduce confusion during the trial.  All multi-page exhibits shall be fastened together and each page within the exhibit shall be numbered.  All photographs shall be marked individually.  The list of exhibits shall not include excerpts of depositions that may be used to impeach witnesses.

Each party may use an exhibit designated by the other.  In the event Plaintiff and Defendants offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is first identified.  The Court cautions the parties to pay attention to this detail so that all concerned will not be confused by one exhibit being identified with both a number and a letter.

A.    The Court will not permit introduction of other exhibits unless: (1) the party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not be reasonably anticipated prior to pretrial, or (2) the exhibit was discovered after the pretrial and the proffering party makes the showing required in paragraph "B" below.

B.    Upon the post-pretrial discovery of exhibits, the counsel shall promptly inform the Court and opposing counsel of the existence of such exhibits so that the Court may consider at trial their admissibility.  The exhibits will not be received unless the proffering party demonstrates: (1) the exhibits could not reasonably have been discovered pretrial; (2) the Court

8

and counsel were promptly informed of their existence; and (3) counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he or she has made the exhibit(s) reasonably available for inspection by opposing counsel.

C.    Each party is directed to present one copy of the exhibit(s) and the final exhibit list to the Court Clerk's Office, **no later than 3:00 p.m.**, on **September 8, 2026**, or at such earlier time as may be ordered by the Court.  The Court shall be presented with a copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter.  Each binder shall be no larger than three inches in width and have an identification label on the front and side panel.

D.    It is the duty of counsel to ensure that witnesses have access to a copy of exhibit(s) if needed.

**XIII.   <u>DISCOVERY DOCUMENTS</u>**

A.    <u>Lodging Deposition Transcripts and Video Files</u>

It is the duty of counsel to ensure that any deposition transcripts that are to be used at trial are lodged with the Clerk of the Court **not later than September 8, 2026**.  Counsel are cautioned that failure to discharge this duty may result in the Court precluding use of the depositions at trial or imposition of such other sanctions as the Court deems appropriate.

B.    <u>Use of Depositions</u>

If the parties intend to use depositions at trial, they are ordered to file with the Court and exchange between themselves **no later than September 8, 2026**, a final statement designating portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).  Objections to deposition designations must be filed **by September 10, 2026**.

C.    <u>Interrogatories and Admissions</u>

To the extent the parties intend to offer or read into evidence any portions of Answers to Interrogatories or Admissions, a final statement designating those discovery responses shall also be filed and exchanged **no later than September 8, 2026** (except portions to be used only for

impeachment or rebuttal).

## XIV.  **FURTHER DISCOVERY OR MOTIONS**

Discovery has closed and the deadline to file dispositive motions has passed.  Plaintiff does not intend to request further discovery or additional pretrial motions at this time other than motions *in limine*.  Plaintiff identifies anticipated disputes concerning the admissibility of testimony and evidence at trial that should be resolved by motions *in limine* prior to trial in the Joint Pretrial Conference Statement.  (ECF No. 57 at 11.)  Defendants did not provide a statement of discovery or motions.

## XV.  **STIPULATIONS**

There are no stipulations between the parties currently.  Plaintiff identified proposed stipulations in the Joint Pretrial Conference Statement.  (ECF No. 57 at 17.)

## XVI.  **AMENDMENTS**

Plaintiff does not intend to amend the pleadings at this time.  The parties agree to dismiss all Doe Defendants.

## XVII.  **SETTLEMENT CONFERENCE**

At the Final Pretrial Conference, the parties informed the Court they will attend a settlement conference on September 8, 2026 at 10:00 a.m. before Magistrate Judge Riordan.

## XVIII.  **JOINT STATEMENT OF THE CASE**

The parties are directed to meet and confer and shall file a short joint statement of the case to be read to the jury at trial **no later than September 8, 2026**.  If the parties are unable to agree to a joint statement, the parties may submit separate statements or the Court may provide its own brief case statement.

## XIX.  **SEPARATE TRIAL OF ISSUES**

The Court defers ruling on whether to bifurcate trial as to the amount of punitive damages.

## XX.  **IMPARTIAL EXPERTS – LIMITATION OF EXPERTS**

The parties do not seek appointment of an impartial expert or any limitation on the number of expert witnesses.

///

10

**XXI.   ATTORNEYS' FEES**

Plaintiff will be seeking attorneys' fees pursuant to Local Rule 293 and under 42 U.S.C. § 1988(b) after trial has concluded.

**XXII.   TRIAL EXHIBITS AND TRIAL PROTECTIVE ORDER**

Neither party seeks a trial protective order or special handling of trial exhibits at this time.

**XXIII. PROPOSED JURY INSTRUCTIONS, VOIR DIRE, AND VERDICT FORM**

A.   Jury Instructions

Counsel are directed to meet and confer and to attempt to agree upon a joint set of jury instructions.  If the parties are unable to agree to a joint set of jury instructions, the parties shall file a set of stipulated jury instructions, then the parties may file and submit additional proposed jury instructions through separate filings.  Pursuant to Local Rule 163, proposed jury instructions shall be filed with the Court **no later than September 8, 2026.**  The filed proposed jury instructions shall also be submitted via email as a Word document to Courtroom Deputy Clerk, Michele Krueger (mkrueger@caed.uscourts.gov).

Counsel shall use the Ninth Circuit Model Jury Instructions and any revisions.  Alternate instruction or authority may only be used if a Ninth Circuit Model Jury Instruction is unavailable.  All instructions shall be, to the extent possible, concise, understandable, and free from argument.  *See* Local Rule 163(c).  **Any modifications of instructions from statutory authority, case law, or from any form of pattern instructions must be specifically noted and explained by underlining additions and bracketing deletions or redlining.**

B.   Verdict Form

The parties shall file a joint verdict form concurrently with proposed jury instructions **no later than September 8, 2026**.  If necessary, a special verdict or interrogatories shall be included for all factual disputes submitted to the jury that must be resolved before questions of law can be decided, and for any other issue on which specific responses are desired.  *See* Local Rule 163(e).  The parties shall include a second separate verdict form as to the amount of punitive damages.

C.   Voir Dire

The parties shall submit proposed voir dire questions to the Court.  The Court reserves the

11

right to conduct all examination of prospective jurors.  Pursuant to Local Rule 162.1, the voir dire questions shall be filed with the Court **not later than September 8, 2026**.

## XXIV. **AUDIO / VISUAL EQUIPMENT**

The parties are required to notify the Courtroom Deputy Clerk, Michele Krueger, **twenty-one (21) days before trial**, if they wish to reserve and arrange for orientation with all parties on the Court's mobile audio/visual equipment for presentation of evidence.  There will be one date and time for such orientation.

## XXV.  **OBJECTIONS TO PRETRIAL ORDER**

Each party is granted **fourteen (14) days** from the entry of this Final Pretrial Order to object to any part of the order or to request augmentation to it.  A Final Pretrial Order will be modified only upon a showing of manifest injustice.  If no objection or modifications are made, this Order will become final without further order of the Court and shall control the subsequent course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Date: July 10, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

12