**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich (SBN 319508)
msincich@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

**THE SEHAT LAW FIRM, PLC**
Cameron Sehat (SBN 256535)
cameron@sehatlaw.com
Mónica Reyes-Santiago, Esq. (SBN 339807)
monica.rs@sehatlaw.com
5100 Campus Drive, Suite 200
Newport Beach, CA 92660
Tel: (949) 825-5200 | Fax: (949) 313-5001

*Attorneys for Plaintiff*, CINDY ADAMS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CINDY ADAMS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF REDDING, et al.,<br><br>Defendants. | Case No: **2:20-cv-01610-TLN (DMC)**<br><br>[*Honorable Troy L. Nunley*]<br>*Magistrate Judge Dennis M. Cota*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* No. 2 TO EXCLUDE UNKNOWN CRIMES, WRONGS, AND ACTS CHARACTER EVIDENCE**<br><br>[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]<br><br>**<u>Hearing on Motions *in Limine*</u>**:<br>Date: September 14, 2026<br>Time: 09:30 a.m.<br><br>Ctrm: 2<br>501 I Street, 15th floor, Sacramento, CA 95814350 West 1st Street, 7th Floor<br>Los Angeles, California 90012 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Plaintiff CINDY ADAMS hereby moves *in limine* for an order excluding any evidence, testimony, argument, or reference at trial to any information of crimes, wrongs, or acts, both prior to and during the incident, as to Plaintiff, decedent, and passengers of the Scion, including: history, arrest, convictions, incarcerations, contacts with police, and any detail unknown about the warrant, including who it was for, the purpose of the warrant, and details as to any alleged crimes.

Plaintiff will suffer specific prejudice if this Motion *in Limine* is not granted because information unknown is irrelevant to the totality of circumstances Defendant Officers faced, any remote relevance is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence, as well as all being impermissible character evidence and hearsay. Plaintiff makes this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 404, 602, 801, 802, 805 and the prohibition of hindsight evidence in the reasonableness analysis of use of excessive force cases pursuant to *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011).

Plaintiff bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiff's Motions *in Limine* and Exhibits attached thereto, Plaintiff's [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court. This motion is made following an attempt to conference with counsel from which no resolution was reached regarding these subject areas.

Respectfully submitted,

DATED: August 24, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Marcel F. Sincich*

Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a §1983 civil rights and state tort case arising from the use of excessive and unreasonable force against Jesse Adams by City of Redding Police Department ("RPD") Officers Kyle Corrigan, Christopher Staup, and Edward McGinnis ("Defendant Officers"). The central issue in this case is whether Defendant Officers' use of force was excessive or unreasonable. The facts of consequence to this officer-involved shooting are whether Mr. Adams was an immediate threat of death or serious bodily injury, whether a warning was given, whether there were less intrusive alternatives, and whether Mr. Adams was resisting. Other information is not relevant to this matter and should be excluded. Defendants will erroneously attempt to argue that unknown character evidence is relevant to whether Mr. Adams was an immediate threat of death or serious bodily injury.

By this Motion *in Limine*, Plaintiff moves to exclude from testimony, exhibits, and argument at trial any information related to other crimes, wrongs, or acts, is irrelevant, prejudicial, hearsay, and impermissible character evidence including: (A) any of Mr. Adams' criminal history; (B) any prior contacts with law enforcement; (C) any prior arrests; (D) any prior convictions; (E) any charges filed not resulting in conviction; and (F) any detail unknown about the warrant, including who it was for, the purpose of the warrant, and details as to any alleged crimes.

Defendants' attempt to use impermissible character evidence that is designed to distract the jury from focusing on Defendant Officers' conduct and intended to inflame the passions of the jury against Adams and should be excluded. Plaintiff contends that this unknown information is irrelevant, impermissible character evidence, hearsay, and any remote probative value is substantially outweighed by its prejudicial effect.

Thus, for the following reasons, Plaintiff respectfully requests the Court issue an order excluding the foregoing criminal history information and testimony from the trial.

## II. IRRELEVANT INFORMATION UNKNOWN SHOULD BE EXCLUDED

Under the Federal Rule of Evidence, evidence that does not tend to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable is not admissible. Rules 401, 402. Relevant evidence here is facts that will assist the jury in determining the *Graham* factors. Defendant Officers' use of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). The jury will balance of the nature of the harm and quality of the intrusion on Adams' rights against the countervailing governmental interests at stake. *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396); *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002); *see Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017).

The nature and quality of the intrusion here was the use of less lethal force and the "extreme" use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 9 (1985) (deadly force intrusiveness is unmatched); *Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, (4) the availability of alternative methods to effectuate an arrest or overcome resistance, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), and (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012).

Adams' history does not tend to make the existence of any *Graham* factor more or less probable. "In determining whether the officer used excessive force in this case," the Ninth Circuit provides fifteen examples of potentially relevant information to the circumstances. None pertain to a subject's history or unrelated crime in the area. *See* Ninth Circuit Model Jury Instructions, No. 9.27. "[E]vidence of other crimes or wrong acts is not

looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986).

The Ninth Circuit has explained that in excessive force cases, it is permissible for officers to testify "in a limited manner" about "their knowledge of [a decedent's] criminal history," because the testimony is "relevant to establish the facts and circumstances known to the officers" during the confrontation. *Ruvalcaba v. City of Los Angeles*, 54 F.3d 1323, 1328 (9th Cir. 1995).

*Corrigan did not know Adams' name and did not know if it was associated with the vehicle or the warrant*. Initially, Corrigan did not know anything about the vehicle or the occupants of the vehicle and knew nothing as to any form of violent or criminal history. Corrigan had never met Adams before, knew nothing about him and was waiting for dispatch to provide more information from the license plate.

> **Q. So as you're approaching the vehicle, I think you mentioned earlier you didn't know even how many occupants were in the vehicle, let alone who they were; correct?**
>
> A. Correct. I had very little information at this point.
>
> **Q. At that point in time dispatch had not reported back to you any information from you giving them the license plate?**
>
> A. Correct.
>
> **Q. So you didn't know whether or not the vehicle essentially had any kind of report of it being stolen at that point?**
>
> A. Correct.
>
> **Q. Is it fair to say that you didn't know if any of the occupants of the vehicle had any kind of violence or criminal history as well?**
>
> A. Correct.

Exh. A, Corrigan Depo at 53:14-54:5.

> **Q. And then after you were able to make contact and you were speaking with the driver, did you recognize the driver at all?**
>
> A. No. I did not know who the driver was either.

Exh. A, Corrigan Depo at 58:4-7.

Corrigan did not identify Adams and did not know his name. Corrigan did not know

Corrigan received information from dispatch that "**the vehicle**", **not Adams and not the driver**, was associated with a wanted subject. All that Corrigan discovered from dispatch was that there was a felony warrant that was extradited out of Washington and that the Scion matched the description. Corrigan's lack of information and belief that the vehicle was stolen was evident in his next steps. He focused his attention on the more important concern of whether there was a valid registration and insurance for the vehicle – not concerned with an unknown violent criminal history.

> **Q. And what were the documents that actually got handed to you?**
>
> A. I don't actually know what those documents are. At that point I was having a difficult time identifying the driver, and I received information from Shascom the vehicle I was associated to was a wanted subject. So I shifted my focus to whether or not the vehicle had a valid registration and insurance to some more pressing concerns.

Exh. A, Corrigan Depo at 61:4-12.

> **Q. And what information did the dispatch give you?**
>
> A. They asked me if I was clear for confidential information. I told them that I was, and they told me that the license plate I had provided was associated to a subject with a felony warrant that was extradited out of Washington. They described the vehicle to me, and I informed them that the description they provided matched the vehicle that I was out with, and then I was out with three occupants in the vehicle.

Exh. A, Corrigan Depo at 62:4-12.

> **Q. And then essentially the information was that the registered owner is the person that had the felony warrant?**
>
> A. I don't believe it was the registered owner. I want to say I actually don't know who the registered owner of the vehicle is, but I believe it was that the vehicle was flagged as associated to a subject who had a felony warrant.

Exh. A, Corrigan Depo at 63:11-17.

> I informed them that of the want association from Shascom about the person with the felony warrant and I believe that the driver was not giving me his real name.

Exh. A, Corrigan Depo at 74:19-22.

Corrigan did not know if the felony warrant was for the owner of the Scion; did not know who the owner of the Scion was; did not know if Adams was the owner of the Scion; and he specifically did not know if Adams was associated with the felony warrant. Further the extent of Corrigan's information about the felony was that it was for burglary.

**Q. So the subject associated with the felony warrant you were not sure at that point in time if it was the registered owner?**
A. Correct.
**Q. And at that point in time, did you know who the registered owner of the vehicle was?**
A. No, I didn't.
**Q. Did you know if the driver of the vehicle was a registered owner?**
A. I did not.
**Q. Did you know if the driver of the vehicle was the subject that's associated with a felony warrant?**
A. I did not.
**Q. Did you ever gather any information that the registered owner of the vehicle were one of the two passengers in the vehicle?**
A. No, I did not.
**Q. Did you have any information as to what the felony warrant was for?**
A. I believe it was for burglary.

Exh. A, Corrigan Depo at 64:9-65:3.

Corrigan's lack of information as to Adams again is evident in his next steps. After getting information from dispatch about the felony, he sought to identify the other occupants of the Scion.

**Q. What did you do after you got this information from dispatch?**
A. I tried to identify the other occupants in the vehicle.

Exh. A, Corrigan Depo at 65:10-13.

*Staup did not know Adams' name and did not know if it was associated with the vehicle or the warrant*. First, Staup got all his information from Corrigan and the same dispatch. If Corrigan did not know, Staup did not know.

**Q. Can you tell me basically what the information you had was.**

A. …either the car was wanted or the person driving it. I felt like it might have been a stolen car…. I just don't recall exactly what the information was….

**Q. What would be the source of that information?**

**Would that be over your police radio?**

A. Yes, that's correct.

**Q. So whatever information you had or didn't have, you think the best source would be to listen to the dispatch recording?**

A. Yes. For sure.

**Q. Any other information that you recall having other than what you've told me so far?**

A. Not that I recall, no.

**Q. For example, did you have information as to the name of the driver of the car?**

A. I don't think so.

Exh. B, Staup Depo at 23:13-24:11. Conveniently, Defendants have never produced the dispatch recording or the call history. (Sincich Decl. ¶3; Exh. B, Staup Depo at 30:3-4 – "We do have a call history, but I've never looked at it.")

**Q. Did you have any information as to whether the person had a criminal history before you got to the parking lot?**

A. No.

Exh. B, Staup Depo at 25:13-16.

Any testimony that Defendants had specific information as to Adams' criminal history lacks credibility and is clearly erroneous. Defendants did not know who the owner of the vehicle was, did not know if the warrant was for the owner or for someone else, did not know if Adams owned the vehicle, and did not even know Adams' name. (Exh. B, Staup Depo at 30:16-18 – "he was playing what we would call the 'name game,' meaning, that he was giving him what he believed to be a false name.")

Therefore, the subject information is not relevant to Defendant Officers' use of excessive and unreasonable deadly force in this matter and should be excluded.

## III. THIS EVIDENCE IS IMPERMISSIBLE CHARACTER EVIDENCE

Under Rule 404, the foregoing items of evidence Plaintiff seek to exclude cannot be used to prove that Plaintiff acted in some general "bad character" during the incident. Rule 404(a)(1) specifically prohibits character evidence, stating that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Further, Ninth Circuit case law is clear that character evidence is normally not admissible in a civil rights case. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," i.e., an essential element of a charge, claim, or defense, for character evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002). Character is not an essential element to this matter. For example, testimony regarding information gathered after the incident relating to any criminal history or other wrongs pose a danger that the jury will (1) improperly infer that Defendant Officers knew this information, (2) improperly infer that Mr. Adams had the propensity to engage in criminal or inappropriate conduct—including toward Defendant Officers on the date of the incident—and (3) reach a verdict that does not reflect the circumstanced Defendant Officer faced during the incident.

Defendants' intent is clear—to use other alleged and inferred crimes, wrongs, and acts of Mr. Adams as "[e]vidence of a person's character or character trait … to prove that on a particular occasion the person acted in accordance with the character or trait." See Fed. R. Evid. 404(a), (b). In other words, any such evidence proffered would be an impermissible attempt to use this prejudicial information to show that Mr. Adams had a propensity for violence towards police officers to prove that Mr. Adams acted in accordance with that character trait, which is impermissible under the Federal Rules. *Id.* Defendants cannot erroneously claim that this information is relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Further, there is no habit or routine applicable to this case. See Fed. R. Evid. 406.

Plaintiff anticipates that Defendants may seek to use this unknown information as evidence of a propensity for violence. "Corroborating" evidence is propensity evidence. *See Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) (excluding "any circumstantial evidence that requires an inference of a person's character to make it relevant"). Admission of this impermissible character evidence would be nothing more than a backdoor attempt to tarnish Plaintiff's character and pollute the jury against him. The above-mentioned specific instances of conduct are not a permitted method of proving character. Rule 405 (Adv. Comm. Notes, stating specific instances of conduct "possess the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time). Thus, this impermissible character evidence should be excluded.

**IV. THIS INFORMATION UNKNOWN IS UNDULY PREJUDICIAL**

The subject information unknown should also be excluded because any probative value it may have is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, waste of time, and needlessly presenting cumulative evidence. Fed. R. Evid. 403. "Unfair prejudice" means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses); *Jackson v. City of Gahanna*, 2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011) ("Allowing evidence of the illegal items seized from the Plaintiff...would undermine the protections of the Fourth Amendment by permitting the jury to infer that the Plaintiff's culpability or status as a presumed drug dealer justify the Defendant's use of force against him."); *Wisler*, 2008 WL 2954179, at *5; *Kunz v. DeFelice*, 538 F.3d 667, 676-77 (7th Cir. 2008). The information Defendants intend to introduce has minimal if any probative value at all. Yet Defendants seek to introduce information that is so prejudicial there is no way Plaintiff will be afforded a fair trial.

Evidence of unknown and unrelated criminal history, other bad acts or wrongs is unduly prejudicial because it is likely to lead a jury to make negative assumptions about Mr.

Adams' character that do not pertain to the incident at issue in this case. *See Speer v. Cnty. of San Bernardino*, No. EDCV 20-44 JGB (SPx), 2021 WL 5969521, at *4 (C.D. Cal. Aug. 9, 2021) (finding "that any evidence of Plaintiff's criminal history and prior contacts with law enforcement that Deputy Millan was unaware of at the time of the incident has no likelihood of proving any material facts relevant to Plaintiff's claim and would be highly prejudicial" and excluding it on that basis); *Tucker*, 2018 WL 6074550, at *4 (holding criminal history not known to defendant officers was inadmissible under FRE 403, given that its "minimal probative value" was outweighed by risk of prejudice). Because any conceivable probative value of such testimony, if any exists, would be substantially outweighed by unfair prejudice, evidence or testimony regarding unknown and unrelated criminal history, wrongs or other bad acts discovered after the incident should also be excluded under Rule 403.

Plaintiff anticipates that Defendants will attempt to take every opportunity to insert other crimes, wrongs, and acts into as many witnesses' testimony as possible to inflame the passions of the jury against Plaintiff, depriving him of a fair trial. Defendants gameplan is further prejudicial because, if allowed, they will ask introduce evidence specifically designed to inflame the passions and prejudices of the jury. "[E]ven a murderer has a right to be free from [civil rights violations] and the correlative right to present his claim[s] of [violations] to a jury that has not been whipped into a frenzy of hatred." *Wilson v. City of Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993); *see Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016); *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *cf. Rascon v. Hardiman*, 803 F.2d 269, 278 (7th Cir. 1986) (affirming exclusion of excessive force decedent's mental health history, even though officers knew about his past suicide attempt and mental illness history and argued it justified their actions in subduing him, because of danger jury would conclude subduing was reasonable based on status rather than conduct at the time); *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1060-61 (N.D. Ill. 2009). This inflammatory evidence is likely to mislead and confuse the jury into reaching a verdict that reflects consideration of unrelated wrongs or other bad acts as justification for

Defendant Officers' excessive force or limiting Plaintiff's damages on an improper basis.

Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (*en banc*), *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central factual dispute in this case is whether Mr. Adams posed an immediate threat of death or serious bodily injury to anyone when Defendant Officers used excessive force against him. Refuting the inferences that Defendants may attempt to raise will necessitate several mini trials on collateral issues that have nothing to do with the central factual dispute, depriving Plaintiff of a fair trial. *Blancha*, 972 F.2d at 516. Accordingly, Plaintiff respectfully request that the Court also exclude the subject information pursuant to Rule 403.

## V. THIS EVIDENCE SHOULD ALSO BE EXCLUDED AS HEARSAY

Finally, the Court should also exclude any reports containing the aforementioned information as inadmissible hearsay without any exception under FRE 801, 802, and 805. This includes any felony complaints and police reports containing this information. Because all evidence that is the subject of this Motion constitutes information unknown to Defendant Officers during the incident, Defendant Officers cannot testify to this information based on personal knowledge. *See* Fed. R. Evid. 602.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order excluding any other crimes, wrongs, or acts from trial in this matter.

Respectfully submitted,

DATED: August 24, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Marcel F. Sincich*

Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*