**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 | Fax: (818) 347-4118

**THE SEHAT LAW FIRM, PLC**
Cameron Sehat, Esq. (SBN 256535)
cameron@sehatlaw.com
Mónica Reyes-Santiago, Esq. (SBN 339807)
monica.rs@sehatlaw.com
5100 Campus Drive, Suite 200
Newport Beach, CA 92660
Tel: (949) 825-5200 | Fax: (949) 313-5001

*Attorneys for Plaintiff*, CINDY ADAMS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CINDY ADAMS, as Personal Representative to the Estate of JESSE ADAMS, and individually,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF REDDING, a governmental entity; KYLE CORRIGAN, individually; CHRISTOPHER STAUP, individually; EDWARD MCGINNIS, individually; and DOES 4 through 10,<br><br>Defendants. | Case No.: 2:20-cv-01610-TLN (DMC)<br><br>[*Honorable Troy L. Nunley*]<br>*Magistrate Judge Dennis M. Cota*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONTINUE TRIAL**<br><br>Trial Date: September 14, 2026<br>Complaint Filed: August 11, 2020 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Cindy Adams hereby submits her Opposition to Defendants' Motion to Continue Trial.

# TABLE OF CONTENTS

**I. INTRODUCTION ........ 1**

**II. LEGAL STANDARD ........ 3**

**III. ARGUMENT ........ 4**

A. Defendants Have Not Shown Good Cause ........ 4

B. Defendants Were Not Diligent ........ 7

C. Defendants Have Not Shown A Likelihood That Continuance Will Accomplish The Alleged Purpose ........ 7

D. Continuance Will Be Extremely Inconvenient For The Court, Plaintiff, And Witnesses ........ 9

E. Plaintiff Will Be Greatly Prejudiced By Continuance ........ 11

**IV. CONCLUSION ........ 12**

# TABLE OF AUTHORITIES

## Cases

*Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*,
490 F.3d 718 (9th Cir. 2007) .......... 10

*ESG Capital Partners LP v. Stratos*,
22 F.Supp.3d 1042 (C.D. Cal. 2014) .......... 9

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
889 F.2d 899 (9th Cir. 1980) .......... 9

*IBM v. Brown*,
857 F.Supp 1384 (C.D. Cal 1994) .......... 9

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .......... 3

*Keating v. Office of Thrift Supervision*,
45 F.3d 322 (9th Cir. 1995) .......... 9

*Mission Power Eng'g v Co. v. Continental Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) .......... 11

*Pagtalunan v. Galaza*,
291 F.3d 639 (9th Cir. 2002) .......... 10

*Perez v. Cty. of Los Angeles*,
2016 WL 10576622 (C.D. Cal. May 3, 2016) .......... 10

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*,
720 F.Supp.805 (N.D. Cal. 1989) .......... 9

*Thompson v. BMW of N. Am., LLC*,
334 F.R.D. 230 (C.D. Cal. 2020) .......... 3

*U.S. ex rel. Schumer v. Hughes Aircraft Co.*,
63 F.3d 1512 (9th Cir. 1995) .......... 3, 4

*Ungar v. Sarafite*,
376 U.S. 575 (1964) .......... 3

*United States v. 2.61 Acres of Land*,
791 F.2d 666 (9th Cir. 1985) ........ 4

*United States v. Flynt*,
756 F.2d 1352 (9th Cir. 1985) ........ 4

*United States v. Real Prop. Located at 22 Santa Barbara Drive*,
264 F.3d 860 (9th Cir. 2001) ........ 11

*Wong v. Regents of Univ. of Cal.*,
410 F.3d 1052 (9th Cir. 2005) ........ 3

*Zivkovic v. S. Cal. Edison Co.*,
302 F.3d 1080 (9th Cir. 2002) ........ 3, 4

**Statutes**

28 U.S.C. §§471-82 ........ 10
Fed. R. Civ. P. 16(b)(4) ........ 3

**Rules**

Local Rule 230 ........ 3

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION**

## I. INTRODUCTION

On December 22, 2019, at approximately 3:15 a.m., Defendant Officer Kyle Corrigan ("Corrigan") observed a white Toyota Scion with Washington State license plates travel past him. Corrigan followed the Scion, driven by Jesse Adams ("Adams"), to observe his driving. Corrigan claims the Scion changed lanes without signaling, so Corrigan activated his overhead lights to initiate a stop. Adams complied and pulled the Scion into a parking lot.

Defendant Officers Edward McGinnis ("McGinnis") and Christopher Staup ("Staup") arrived using their vehicles to block the parking lot exit. The officers approached the vehicle, and a short time later, without justification, Corrigan escalated the situation by breaking the driver-side window with his baton and attempted to pull Adams from the vehicle through the shattered window and then pepper sprayed him twice. In fear, Adams put the car in reverse and attempted to flee. No officers were in the path of the vehicle but since the officers blocked the exit and Adam's vision was impaired from the pepper spray, the Scion collided with Staup's vehicle—who happened to have a ride along within it.

Nevertheless, after the vehicle stopped, Staup went to the shattered driver's window of the Scion and shot Adams in the chest. Still, no officer was in the path of the Scion immediately prior to or when Staup shot Adams. The Scion was stopped and not moving when Staup shot Adams, and the Scion never moved in reverse after the collision. Thus, Adams was not an immediate threat of death or serious bodily injury at the time of the shooting.

Adams died as a result of the incident. His mother, Plaintiff Cindy Adams, filed the operative Second Amended Complaint ("SAC") on June 16, 2021, alleging claims for: (1) excessive force under the Fourth Amendment and denial of medical care under the Fourteenth Amendment under 42 U.S.C. §1983 ("§1983"); (2) municipal liability for custom/policy/practice under *Monell*; (3) battery; (4)

negligence; (5) failure to train under §1983; and (6) a violation of the Tom Bane Civil Rights Act (Cal. Civ. Code §52.1) ("Bane Act"). (Doc. 28.) Defendants filed a motion for summary judgment on January 31, 2024. (Doc. 36.) The Court granted in part and denied in part on January 7, 2025. (Doc. 43.) The Parties filed their first Joint Notice of Trial Readiness on February 7, 2025. (Doc. 44.) Then the Parties filed their second Joint Notice of Trial Readiness on September 8, 2025. (Doc. 55.) The Final Pretrial Conference took place on July 9, 2026, and the Court issued the Final Pretrial Order on July 13, 2026. (Doc. 65.) There was no request to continue the trial or substitute experts at that time.

Now Defendants move to continue the trial because somehow both Defendant Staup and his police practice expert, Jared Zwickey ("Zwickey"), have simultaneously developed some unknown heart conditions and Zwickey has apparently decided to retire as the trial date approaches. Additionally, Defendants also claim they should be allowed to hire a new expert, substituting a new police practices expert for Zwickey. Plaintiff's position on the trial date has not changed—Plaintiff respectfully requests that the September 14, 2026 trial date remain. Plaintiff's counsel has already dedicated significant time preparing for trial and Plaintiff has been patiently waiting for this trial since her son was shot and killed by Staup nearly 7 years ago. As Plaintiff's counsel stated previously, Plaintiff's counsel has already scheduled other matters around this trial. Further, Plaintiff counsel's trial calendar for the rest of 2026 and the first half of 2027 does not have many openings for trial.

There is simply no justification to continue the trial or allow Defendants an opportunity to get a new expert under these circumstances: (i) given how long Plaintiff has waited for trial; (ii) counsel and the Court's busy trial schedules; (iii) we cannot predict anyone's health condition months from now; and (iv) allowing the defense the opportunity to retain a new police practices expert is unfair prejudice to Plaintiff and unjustly enriches Defendants. Further, Plaintiff believes continuing the

trial and a new expert is unnecessary and unjustified where (a) there is no indication that Zwickey will not recover or can be cleared by his cardiologist prior to trial; (b) Zwickey could appear by Zoom to testify at trial; or (c) Zwickey's deposition transcript can be read to the jury in lieu of live testimony; and (d) Staup need not be present throughout the whole trial and accommodations can be made for Staup if necessary.

Cindy Adams deserves a timely opportunity to redress the violations of her son's Constitutional rights without further delay. Continuing the trial merely because Zwickey has recently decided to retire knowing he had an open case set for trial for which he submitted a report on November 2, 2023, is unjustified. For these reasons, Plaintiff respectfully requests an order denying Defendants' Motion to Continue the Trial.

## II. LEGAL STANDARD

In general, the pretrial scheduling order can only be modified "upon a showing of good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4); see also Local Rule 230; *see United States v. Schumer*, 63 F.3d 1512, 1526 (9th Cir. 1995); *see also Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Thompson v. BMW of N. Am., LLC*, 334 F.R.D. 230, 233 (C.D. Cal. 2020) (emphasis added) (*quoting Johnson*, 975 F.2d at 609). "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Thompson*, 334 F.R.D. at 233 (*quoting Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)). Efforts to efficiently resolve cases "will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005).

Defendants have not shown good cause for this Court to modify the trial date. Defendants must show, but have not done so, good cause why the current trial date

could not be met despite their diligence. *See Zivkovic*, 302 F.3d at 1087. Courts also look at other factors including: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent, (5) the inconvenience to the court, the opposing party, and witnesses; and (6) the likelihood that the continuance will accomplish the underlying purpose. *U.S. ex rel. Schumer v. Hughes Aircraft Co*., 63 F.3d 1512, 1526 (9th Cir. 1995); *see also United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir. 1985), *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985).

This trial is now 3 weeks away; this Motion is opposed; Plaintiff would suffer great prejudice; Defendants were not diligent; continuance would be inconvenient to the Court, Plaintiff, and witnesses; and all that continuance would accomplish is unjustly enriching Defendants. Despite the vague and unsupported conclusions offered by the Defendants, the solution here is simple, *if* these witnesses cannot appear in person, they can appear by Zoom; and *if* these witnesses cannot testify at all, then their depositions can be used in their stead. Importantly, Defendants have not provided an adequate showing that they cannot appear in person and certainly have not shown that they cannot appear by Zoom. Plaintiff suggested this reasonable accommodation and was open to discussing other suggestions. However, Defendants were not interested; did not respond to Plaintiff's correspondence and did not address it in their Motion. Since relevant factors and the interest of justice weigh in favor of keeping the trial set for September 14, 2026, Plaintiff requests the Motion be denied in full.

## III. ARGUMENT

### A. Defendants Have Not Shown Good Cause

Defendants' entire Motion is merely a recitation of the self-serving, vague, and conclusory declarations of Defendant Staup and his police expert, Zwickey. These declarations do not show good cause.

First, the Staup Declaration: Staup gives no indication when he retired; no description of what his "heart condition" is currently; no information as to what his "heart condition" may become; no indication how this vague heart condition was a result of his service as police officer, the relevance of which is unclear except as an attempt to garner sympathy; no indication when the worker's compensation claim was opened, the investigation of it, or the results of it; no description of what vague "symptoms related to a cardiac or cardiovascular condition" he claims to have been experiencing; Staup is not a medical professional capable of providing a diagnosis; no diagnosis has been made; Staup has not produced to Plaintiff or this Court any medical records verifying or explaining his condition; there is no description of what vague "medical evaluations" are required or undergoing; instead all Staup had informed the Court is that he does not know the nature of this "condition." Based on his declaration, we know that Staup has not been diagnosed with any heart condition. Staup may never be diagnosed with any heart condition—he could merely be stressed about the upcoming trial. Stress of a party is not good cause to continue a trial. Again, there is no record for a physician making any recommendations regarding Staup before the Court, and no explanation as to how Staup's undiagnosed, unspecified "symptoms" somehow prevent him from travel and/or testifying. Still, Plaintiff contends that *this civil rights trial* where Staup is the defendant shooting officer in a wrongful death case *is necessary travel*. Since Defendants have not shown good cause regarding Staup, their motion should be denied.

But even if everything Defendants stated is accepted by the Court, there is a simple solution if the Court finds fitting: (i) Staup does not have to be present the entire trial, just his own testimony; or (ii) does not have to be present in person at trial, just appear by Zoom for his testimony; or (iii) does not have to be present at all, and portions of his testimony under oath will take his place.

Next, <u>Zwickey's declaration</u> is similarly insufficient as good cause to continue the trial or justify hiring a new expert: Zwickey was retained in 2023, knew this trial would be approaching, yet appears to have failed to inform counsel of his vague undiagnosed condition until a month after the pretrial conference and only in response to discussions with Defendants' counsel. Zwickey stated that he has "reviewed case materials and prepared to testify at trial." (Zwickey Decl. ¶4.) That is what should occur. Also, like Staup, Zwickey did not provide any medical records verifying or describing his symptoms or recommendations. Strangely, Zwickey, who stated that he resides in Oldtown, Idaho (where it is safe to conclude that is where he is being evaluated considering he claims he cannot travel), but provided a vague two-sentence letter from a family medicine doctor in California. Family medicine doctors treat a wide range of patients with a wide range of health issues focusing on overall health and preventative care, while cardiologists specialize specifically in diagnosing and treating heart-related conditions based on extensive specialized training. There is no indication that Dr. Grewal ever personally evaluated Zwickey, no indication that he ever spoke to Zwickey, no indication that he reviewed any of Zwickey's medical records, and no indication that he ever spoke with any of Zwickey's cardiologists. In fact, Dr. Grewal stated that Zwickey would need to be seen and cleared by a cardiologist, inferring that he is not a cardiologist, inferring that Zwickey has not been seen by a cardiologist. Additionally, Zwickey's declaration merely states that his primary care physician has referred him to a cardiologist. Yet, Defendants request that this Court take a civil rights trial off calendar for some indefinite period based on Defendants' word alone. Zwickey apparently did not receive a recommendation from an appropriate cardiologist advising him not to travel, not to testify, or to retire. Since Defendants have not shown good cause regarding Zwickey, their motion should be denied.

But again, even if the Court took his declaration as true, the solution here is simple: (i) Zwickey can appear over Zoom to testify—no travel required, or (ii)

portions of Zwickey's testimony under oath at deposition to read to the jury.

Defendants' entire argument for good cause are vague and conclusory assertions that lack foundation, lack explanation and detail, are hearsay, and are not based on sufficient facts and data. Good cause has not been established by Defendants. Therefore, the Motion should be denied.

**B. Defendants Were Not Diligent**

Defendants' lack of diligence is apparent in the Motion. First, Staup claims he experienced symptoms "over the past several months." (Staup Decl. ¶6.) In other words, prior to the Final Pretrial Conference. Yet, Staup did not tell defense counsel until early August. (Mavrogianis Decl. ¶9.) This issue would have been addressed at the pretrial conference then but for Defendants' lack of diligence. The same can be argued for Zwickey. He does not establish when his symptoms began or when he first saw a physician, yet Defendants admit, Zwickey never reached out to let defense counsel know of the issue. Instead, Defendants waited until August 7 to communicate with Zwickey after which Zwickey decided to tell counsel that he was planning on retiring soon. (Mavrogianis Decl. ¶¶10-11.)

This trial was set for September 14, 2026, for nearly a year. The Court set the trial date on September 9, 2025. (Doc. 56.) Staup and Zwickey knew or should have known that the trial was set for September 14, 2026 since that time. It was incumbent on Staup and Zwickey to keep counsel informed of their availability and condition and incumbent on Defendants to ensure their expert remain available for trial. It is Defendants' lack of diligence in not maintaining contact with Staup and Zwickey to have learned about these undiagnosed issues, until a month prior to trial.

**C. Defendants Have Not Shown A Likelihood That Continuance Will Accomplish The Alleged Purpose**

Plaintiff hopes that both Staup and Zwickey will be able to participate in the trial. In fact, Plaintiff is confident that if the Court denies Defendants' Motion to Continue Trial, that both Staup and Zwickey will participate in this trial. However,

nothing in Defendants' Motion suggests that Staup or Zwickey are going to be diagnosed with anything. Defendants do not know if Staup or Zwickey will not be cleared by a cardiologist if seen prior to trial. Defendants do not know if Staup or Zwickey will recover immediately. Defendants do not know if Staup or Zwickey would be cleared for trial merely because the trial is continued. Defendants do not know if Staup or Zwickey's physician recommendations will change now or in the months to come. Defendants do not know if Staup or Zwickey will get worse in the months to come and will not be able to even testify by Zoom. Continuing trial will not resolve Staup's or Zwickey's unknown, undiagnosed, conditions. Defendants have made no showing of how long it will take for Staup and Zwickey to complete ongoing diagnostic evaluation, and no showing of how long it will take to receive treatment, if treatment is even called for. According to Defendants, "[a]dditional time will provide greater clarity regarding his medical condition and ability to participate in trial proceedings." (Mavrogianis Decl. ¶16.) Despite the lack of clarity presented now, Defendants presumed future clarity could lead to another request for indefinite continuance.

Further, Defendants have no basis to assert that Zwickey "is medically unable to testify." (Motion at 8:2.) Zwickey declared that although he was "instructed by [his] primary care physician not to travel," he was only "advised that [he] should not attend trial or provide testimony." (Mr. Zwickey Decl. ¶¶8-9.) Again, this is the advice of a primary care physician, not a cardiologist. Of course, a reasonable doctor would give the most conservative advice where the doctor does not have the training or expertise to rule out, understand, or diagnose the issues. It appears that Zwickey does not want to testify and does not want to travel because he has decided to retire.

Plaintiff contends that the only purpose a continuance will serve is to allow Defendants more time to prepare for trial; allow Defendants to unjustifiably change and refine their expert opinions to gain an advantage at trial; delay trial indefinitely

so as to exacerbate Plaintiff even further; witnesses will be more likely to forget; as justice will be delayed and therefore denied.

Plaintiff contends that the appropriate procedure, if the Court determines a witness is unavailable to testify in person at trial, is to request for the witness to appear remotely. If necessary, the Court can schedule a Zoom conference with Staup and Zwickey to determine their ability to testify by Zoom. If the Court determines that a witness is unavailable to testify at trial entirely, the appropriate procedure is for parties to designate portions of the witness's deposition the parties intend to offer at trial. (Fed. R. Civ. Pro. 32(a)(1).)

**D. Continuance Will Be Extremely Inconvenient For The Court, Plaintiff, And Witnesses**

Defendants' bold assertion that "the requested continuance will result in minimal inconvenience to the parties or the Court" (Mavrogianis Decl. ¶18) is shortsighted. All plaintiffs have an interest in having their case timely go to trial. Courts uniformly recognize that a "civil plaintiff has an interest in having her case resolved quickly." *ESG Capital Partners LP v. Stratos*, 22 F.Supp.3d 1042, 1046 (C.D. Cal. 2014). Plaintiff has a significant interest in obtaining resolution of this matter and receiving compensation if she proves she is entitled to it. *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F.Supp.805, 809 (N.D. Cal. 1989) ("Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end.").

Judicial efficiency likewise weighs against a continuance since the district court "ha[s] an interest in clearing its docket." *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1980); *see also IBM v. Brown*, 857 F.Supp 1384, 1392 (C.D. Cal 1994). Courts have a strong interest in keeping scheduled dates certain and timely resolving matters as the Court's calendar is also full.

The public also has an interest in the "speedy resolution" of this action. *See, e.g.*, *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995); *see*

*also Molinaro*, 889 F.2d at 903 (finding that the interest of the public "would be frustrated by further delay"). The public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law through the Civil Justice Reform Act of 1990. *See* 28 U.S.C. §§471-82. A continuance would impair that interest. *See*, *e.g.*, *Perez v. Cty. of Los Angeles*, No. CV 15-09585 SJO-FFMx, 2016 WL 10576622, at 4* (C.D. Cal. May 3, 2016).

Defendants request that the trial be set no sooner than January 1, 2027 is akin to requesting an indefinite stay. The Ninth Circuit has warned and recognized the "majority position that lengthy and indefinite stays place a plaintiff effectively out of court. Such an indefinite delay amounts to a refusal to proceed to a disposition on the merits." *Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). Even if litigation may eventually resume, an indefinite stay creates a danger of denying justice. *Id.* "Delay 'inherently increases the risk that witnesses' memories will fade and evidence will become stale.'" *Id.* (citing *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002)). Witnesses may also become unavailable, leave the area, or leave their job with the City, which poses additional dangers of prejudice both regarding loss of critical evidence and added costs associated with securing evidence. *See also Lopez*, 2016 WL 1639547, at *4 ("Nearly 14 months have passed since the shooting of Perez Lopez, and the Court agrees with Plaintiffs that the memories of witnesses, especially those who may not be cooperating with the SFPD, may fade with time.").

Plaintiff and her counsel will be greatly inconvenienced by continuance. Having already cleared their calendars for this trial, and with counsel's extremely busy trial schedule, great inconvenience is obvious. Not knowing when the Court would be available, based on Defendants request for this trial to occur in 2027 and deconflicting defense counsel's trial dates, there is very limited availability to place this trial in 2027.

**E. Plaintiff Will Be Greatly Prejudiced By Continuance**

Defendants completely ignore the prejudice a continuance would cause to Plaintiff and fail to show what prejudice they would suffer by having Staup and Zwickey appear by Zoom or have portions of their depositions read to the jury. Nevertheless, prejudice to Plaintiff would be great.

Plaintiff has already experienced prejudice given that the nature of this motion is akin to requesting *ex parte* relief, which is only appropriate in a narrow set of circumstances. *United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 870 (9th Cir. 2001). "*Ex parte* applications are solely for extraordinary relief. To justify *ex parte* relief, there must be a showing of irreparable prejudice and that the moving party is without fault, or that the crisis occurred as a result of excusable neglect." *See also Mission Power Eng'g v Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492-93 (C.D. Cal. 1995). "Abuse [of the *ex parte* process] is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems for the parties, their lawyers, and for the court." *Id*. at 489.

Here, the problem with this quasi *ex parte* motion is highlighted. "The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid ex parte motions are inherently unfair and they pose a threat to the administration of justice." *Id*. at 490. Plaintiff's opportunity to prepare their opposition is "grossly unbalanced," having only 5 days to oppose, while drafting motions *in limine* filed Monday August 24, 2026, and an inability to properly consult with lead trial counsel, Plaintiff and Plaintiff's expert. *See id*. Unbalance and unfairness are further exacerbated when Plaintiff's counsel is not only working on motions *in limine* in this matter but also has had to drop working on all other deadlines in other cases to protect Plaintiff from having justice delayed even more, including discovery responses also due on Monday August 24, 2026, and an appellate brief due Wednesday August 26, 2026.

Nevertheless, Plaintiff contends that Defendants are not prejudiced by having Staup and Zwickey appear by Zoom. Yet, Plaintiff would be extremely prejudiced, coupled with Defendants being unjustly enriched, should they be permitted to hire a new police practices expert. There are two primary possibilities if this is permitted: (i) the new expert adopts all of Zwickey's opinions and the bases for them—merely testifying to Zwickey's opinions without independent review of the records, which is clearly violation of Federal Rule of Evidence 702; or (ii) the new expert expands the scope of opinions and offers new opinions.

This potential new expert would have the unjust benefit of seeing Zwickey's report and deposition and make modifications, would have the benefit of questions Plaintiff already asked Zwickey at deposition, and strategically alter the responses and opinions to avoid the concessions Plaintiff received from Zwickey. Under the circumstances and given the vague assertions in these declarations, it should be noted that Plaintiff's counsel believes that defense counsel is unhappy with all the concessions Zwickey made in his deposition and are attempting to use his age as an excuse to get a new police practices expert that will not make those concessions. Defendants only have one expert, retained to rebut Plaintiff's police practices expert, Roger Clark (who is older than Zwickey). Permitting Defendants to hire a new expert totally changes the landscape of the case.

## IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendants' Motion to Continue Trial, and if necessary, order a Zoom conference with Staup and Zwickey for the Court to assess their ability to testify remotely.

DATED: August 25, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Marcel F. Sincich*

Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*