**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 | Fax: (818) 347-4118
**THE SEHAT LAW FIRM, PLC**
Cameron Sehat, Esq. (SBN 256535)
cameron@sehatlaw.com
Mónica Reyes-Santiago, Esq. (SBN 339807)
monica.rs@sehatlaw.com
5100 Campus Drive, Suite 200
Newport Beach, CA 92660
Tel: (949) 825-5200 | Fax: (949) 313-5001
*Attorneys for Plaintiff*, CINDY ADAMS

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ROBERT M. FERRIER, SBN 310708
E-Mail: Robert.Ferrier@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456 | Facsimile: 925-478-3260
**ANGELO, KILDAY & KILDUFF, LLP**
BRUCE A. KILDAY, SBN 66415
Email: bkilday@akk-law.com
DERICK E. KONZ, SBN 286902
Email: dkonz@akk-law.com
601 University Avenue, Suite 150
Sacramento, CA 95825
Telephone: (916) 564-6100 | Telecopier: (916) 564-6263
Attorneys for Defendant CITY OF REDDING, CHRISTOPHER STAUP, EDWARD McGINNIS, and KYLE CORRIGAN

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CINDY ADAMS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF REDDING, et al.,<br><br>Defendants. | **Case No.: 2:20-cv-01610-TLN (DMC)**<br><br>[*Honorable Troy L. Nunley*]<br>*Magistrate Judge Dennis M. Cota*<br><br>**[PROPOSED] JOINT AGREED UPON JURY INSTRUCTIONS**<br><br>**<u>Trial</u>:** September 14, 2026<br>Time: 09:00 a.m.<br>Place: Courtroom 2 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

By and through his attorneys of record in this action, Plaintiff Cindy Adams and Defendants City of Redding, Christopher Staup, Kyle Corrigan and Edward McGinnis hereby submit the following [Proposed] Joint Agreed Upon Jury Instructions (redline) to be provided to the jury at trial, pursuant to Federal Rules of Civil Procedure 16 and 51; United States District Court, Central District of California Local Rules 163 (as applicable); and the applicable Orders of the Court.

The parties reserve the right to amend these [Proposed] Joint Agreed Upon Jury Instructions, including but not limited to, subject to any objections, motions *in limine*, and applicable Orders of the Court.

Respectfully submitted,

DATED: September 8, 2026

**LAW OFFICES OF DALE K. GALIPO**
**THE SEHAT LAW FIRM, PLC**

By: */s/ Marcel F. Sincich*
Dale K. Galipo
Marcel F. Sincich
Cameron Sehat
*Attorneys for Plaintiff*

DATED: September 8, 2026

**LEWIS BRISBOIS BISGAARD & SMITH**
**ANGELO, KILDAY & KILDUFF, LLP**

By: */s/ Alexander M. Mavrogianis*
Robert M. Ferrier
Alexander M. Mavrogianis
Derick E. Konz
*Attorneys for Defendants*

# INDEX OF INSTRUCTIONS


| No. | Title | Source | Page |
|---|---|---|---|
| 1. | Duty of Jury | 9th Cir. 1.2; 1.4 | 1 |
| 2. | Claims and Defenses | 9th Cir. 1.5 | 3 |
| 3. | Burden of Proof—Preponderance of the Evidence | 9th Cir. 1.6 | 4 |
| 4. | What is Evidence | 9th Cir. 1.9 | 5 |
| 5. | What is Not Evidence | 9th Cir. 1.10 | 6 |
| 6. | Evidence for a Limited Purpose | 9th Cir. 1.11 | 7 |
| 7. | Direct and Circumstantial Evidence | 9th Cir. 1.12 | 8 |
| 8. | Ruling on Objections | 9th Cir. 1.13 | 9 |
| 9. | Credibility of Witnesses | 9th Cir. 1.14 | 10 |
| 10. | Conduct of the Jury | 9th Cir. 1.15 | 12 |
| 11. | Publicity During Trial | 9th Cir. 1.16 | 15 |
| 12. | No Transcript Available to Jury | 9th Cir. 1.17 | 16 |
| 13. | Taking Notes | 9th Cir. 1.18 | 17 |
| 14. | Bench Conferences and Recesses | 9th Cir. 1.20 | 18 |
| 15. | Outline of Trial | 9th Cir. 1.21 | 19 |
| 16. | Cautionary Instructions | 9th Cir. 2.1 | 20 |
| 17. | Stipulations of Fact | 9th Cir. 2.3 | 22 |
| 18. | Opinion Testimony | 9th Cir. 2.14 | 27 |
| 19. | Evidence In Electronic Format | 9th Cir. 2.17 | 28 |
| 20. | Duty to Deliberate | 9th Cir. 3.1 | 30 |
| 21. | Consideration of Evidence—Conduct of the Jury | 9th Cir. 3.2 | 31 |
| 22. | Communication with the Court | 9th Cir. 3.3 | 33 |
| 23. | Readback or Playback | 9th Cir. 3.4 | 34 |
| 24. | Return of Verdict | 9th Cir. 3.5 | 35 |

| | | | |
|---|---|---|---|
| 25. | Vicarious Liability—Legal Relationship Not Disputed | CACI 3700, 3703 | 36 |
| 26. | Section 1983 Claim—Introductory Instruction | 9th Cir. 9.1 | 37 |
| 27. | Section 1983 Claim Against Defendant in Individual Capacity—Elements and Burden of Proof | 9th Cir. 9.3 | 38 |
| 28. | Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force | 9th Cir. 9.27 | 39 |
| 29. | Battery By Law Enforcement Officer (Nondeadly Force)—Essential Factual Elements | CACI 1305A | 41 |
| 30. | Battery By a Peace Officer (Deadly Force)—Essential Factual Elements | CACI 1305B | 42 |
| 31. | Negligence—Basic Standard of Care | CACI 401 | 44 |
| 32. | Negligent Use of Nondeadly Force By Law Enforcement Officer in Arrest or other Seizure—Essential Factual Elements | CACI 440 | 45 |
| 33. | Negligent Use of Deadly Force By Peace Officer—Essential Factual Elements | CACI 441 | 47 |
| 34. | | | |
| 35. | Negligence—Comparative Fault of Decedent | CACI 407 | 49 |
| 36. | Bane Act—Essential Factual Elements (Civ. Code § 52.1) | CACI 3066 | 50 |
| 37. | Causation: Substantial Factor | CACI 430; 9th Cir. 9.2; *Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir. 1989) | 51 |
| 38. | Causation: Multiple Causes | CACI 431 | 52 |
| 39. | Section 1983 Claim Against Local Governing Body Defendant Based on Official Policy, Practice, Or Custom— | 9th Cir. 9.5 | 53 |

| | | | |
|---|---|---|---|
| | Elements and Burden of Proof | | |
| 40. | Section 1983 Claim Against Local Governing Body Defendants Based on Ratification—Elements and Burden of Proof | 9th Cir. 9.7 | 55 |
| 41. | Section 1983 Claim Against Local Governing Body Defendants Based on A Policy That Fails to Prevent Violations of Law or a Policy of Failure to Train—Elements and Burden of Proof | 9th Cir. 9.8 | 57 |
| 42. | Plaintiff's Damages (Wrongful Death) | 9th Cir. 5.1, 5.2; CACI 3900, 3902, 3903A, 3905, 3921, 3922 | 59 |
| 43. | Decedent's Damages (Survival Damages) | 9th Cir. 5.1, 5.2; CACI 3900, 3905A | 61 |
| 44. | Predicate Question for Punitive Damages | 9th Cir. 5.5 | 62 |
| 45. | Punitive Damages – Calculation | 9th Cir. 5.5 | 63 |


All Ninth Circuit Manual of Model Civil Jury Instruction are the 2025 Edition, last updated June 2026.

All Judicial Council of California Civil Jury Instructions are the 2026 Edition.

**1. DUTY OF JURY**

[To be read at the beginning of trial]

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.2.

[To be read at the end of trial]

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

or

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.4.

## 2. CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff Cindy Adams asserts that Defendants Officers used excessive and unreasonable force, and were negligent in their use of force against decedent Jesse Adams causing bodily injuries and his death . Ms. Adams is claiming damages as permitted by law. Ms. Adams has the burden of proving these claims.

The defendants deny those claims and also contend that the use of force was reasonable under the circumstances. The defendants have the burden of proving contributory negligence.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.5.

## 3. BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.6.

**4. WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I [may instruct] [have instructed] you to accept as proved.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.9.

**5. WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.10.

**6. EVIDENCE FOR A LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.11.

**7. DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.12.

**8. RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.13.

**9. CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.14.

**10. CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result, requiring the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court

immediately, by sending a note through the [clerk] [bailiff] signed by any one or more of you.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.15.

**11. PUBLICITY DURING TRIAL**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.16.

**12. NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.17.

**13. TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.18.

**14. BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.20.

**15. OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 1.21.

## 16. CAUTIONARY INSTRUCTIONS

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the Internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 2.1.

**17. STIPULATIONS OF FACT**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

1. This officer-involved shooting incident occurred on December 22, 2019, at approximately 3:15 a.m., in an empty parking lot of 2174 Pie Street, Redding, California.
2. Defendant Officers Kyle Corrigan and Christopher Staup were acting under the color of law during the incident.
3. Officers Kyle Corrigan, Christopher Staup, and Edward McGinnis were acting within the course and scope of their employment during the incident with Defendant City of Redding.
4. Officer Staup and Officer McGinnis each had a ride-along in their respective vehicles during the incident.
5. Decedent Jesse Adams was driving a White Toyota Scion during the incident.
6. The Scion had a front passenger and a rear driver's side passenger.
7. Officer Corrigan was not responding to a serious or violent crime.
8. Officer Corrigan had no information that the Scion was stolen.
9. Officer Corrigan had no information that anyone in the Scion had ever harmed any person.
10. This was not a dangerous pursuit, Mr. Adams did not run any stop signs or stop lights, did not drive on the wrong side of the road or at high speeds.
11. After Officer Corrigan activated his lights, Mr. Adams immediately yielded and turned into a parking lot, which Officer Corrigan viewed as an act of compliance.
12. There were no other civilian cars in the parking lot.

13. Mr. Adams parked the Scion in a parking stall.
14. Officer Corrigan asked to see Mr. Adams' license, registration, and insurance.
15. Mr. Adams and the front passenger began looking for the items requested.
16. The front passenger handed Mr. Adams the documents and Mr. Adams handed them to Officer Corrigan, which Officer Corrigan recognized as another act of compliance.
17. Officer Staup and Officer McGinnis arrived within a minute of each other.
18. Officer Corrigan's vehicle was parked on the north side of the lot facing west, a couple of car lengths from the Scion.
19. Officer Staup's vehicle was parked left and slightly behind Officer Corrigan's vehicle.
20. Officer McGinnis' vehicle parked left of Staup's vehicle next to the building.
21. The officer vehicles blocked the exit of the parking lot.
22. Officer Corrigan contacting the driver, Officer McGinnis contacting the rear passenger, and Officer Staup contacting the front passenger from the passenger side.
23. Mr. Adams repeatedly asked, "What is this for, why are you stopping me?"
24. Officer Corrigan told Mr. Adams to do what he was told.
25. Mr. Adams put his hands up on the driver's wheel as instructed, which Officer Corrigan saw as another act of compliance.
26. Officer Corrigan tried to open the driver's door.

27. Within two minutes of approaching the Scion, Officer Corrigan intentionally broke the front driver's window with his baton, shattering the glass onto Mr. Adams.

28. With Mr. Adams left wrist still on the steering wheel, Officer Corrigan reached into the Scion and grabbed Mr. Adams intending to pull him out through the broken window.

29. After Officer Corrigan grabbed Mr. Adams, Officer Corrigan intentionally deployed a several-second burst of pepper spray six inches from Mr. Adams' face, including his eyes, nose, and mouth.

30. Officer Staup knew Officer Corrigan had deployed pepper spray at Mr. Adams after he broke the window.

31. Mr. Adams had not been assaultive, never attempted to punch or kick any officer or person, and never verbally threatened any officer or person.

32. Officer Staup went around the back of the Scion to the driver's side.

33. All three officers were on the driver's side of the car prior to the Scion moving backwards.

34. The Scion backed up about two car lengths arching to the west.

35. No officer was in the path of the Scion as it went in reverse.

36. No officer was touched or hit by the Scion when it went in reverse.

37. The Scion stopped at the embankment.

38. Officers Corrigan and McGinnis then moved to the west of the lot, which is to the right of the Scion.

39. After the Scion stopped at the embankment, Officer Staup immediately moved towards the passenger door to his vehicle where his ride-along was seated.

40. The Scion was on the embankment for a few seconds before it moved again.

41. The Scion drove forward and left towards the exit of the parking lot, then impacted Officer Staup's vehicle.

42. The airbags in Mr. Adams' car deployed.

43. No officer was touched or hit by the Scion when it went forward.

44. Officer Staup intentionally used deadly force when he fired his weapon at Mr. Adams.

45. Officer Staup fired a single shot that struck Mr. Adams.

46. Staup did not give any commands or warnings to Mr. Adams before using deadly force.

47. The Scion was stationary and not moving when Officer Staup used deadly force.

48. Officers had no information that Mr. Adams owned a firearm and had no information whether there was a firearm in the vehicle during the incident.

49. The 34-year-old Mr. Adams died on December 22, 2019.

50. Mr. Adams was shot in the chest from the driver side of the Scion.

51. Mr. Adams died as a result of an intermediate range penetrating gunshot wound of the chest.

52. The entrance of the gunshot was to the left upper chest and the trajectory was front to back, left to right, and downward. There was no exit wound.

53. Mr. Adams had sharp and blunt force injuries to the face including small incised wounds, minor abrasions, contusions and lacerations, and had minimal blunt force injuries of the extremities.

54. Mr. Adams was harmed, injured, and died as a result of this incident.

55. The Plaintiff is Lucinda "Cindy" Adams, the mother of Mr. Adams and his successor in interest, seeking both survival damages on behalf of Mr. Adams including for his pre-death pain and suffering and loss of

life, and seeks wrongful death damages for her lifelong loss of her son including his love, companionship, comfort, support, and care.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 2.3.

**18. OPINION TESTIMONY**

You [have heard] [are about to hear] testimony from Roger Clark and Jared Zwickey who [testified] [will testify] about [his] [her] [other pronoun] opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 2.14.

**19. EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff]. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer

provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 2.17.

**20. DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 3.1.

**21. CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you

have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 3.2.

**22. COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 3.3.

**23. READBACK OR PLAYBACK**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

> Because a request has been made for a [readback] [playback] of the testimony of [witness's name] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor[, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation but must be considered in the context of all the evidence presented.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 3.4.

**24. RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 3.5.

## 25. VICARIOUS LIABILITY—LEGAL RELATIONSHIP NOT DISPUTED

In this case defendants Christopher Staup and Kyle Corrigan were the employees of defendant City of Redding.

If you find that defendants Christopher Staup and/or Kyle Corrigan were acting within the scope of their employment when the incident occurred, then defendant City of Redding is responsible for any harm caused by defendants Christopher Staup and Kyle Corrigan's wrongful conduct.

The parties have stipulated that Defendants Christopher Staup and Kyle Corrigan were acting within the course and scope of their employment during the incident with the Defendant City of Redding.

Source: Judicial Council of Cal., Civil Jury Instructions ("CACI") Nos. 3700, 3703, (2026 Edition) (*modified*).

**26. SECTION 1983 CLAIM—INTRODUCTORY INSTRUCTION**

The plaintiff Cindy Adams brings claims under the federal statute, 42 U.S.C. §1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.1.

## 27. SECTION 1983 CLAIM AGAINST DEFENDANT IN INDIVIDUAL CAPACITY—ELEMENTS AND BURDEN OF PROOF

In order to prevail on a §1983 claim against the defendant Officer(s), the plaintiff must prove each of the following elements by a preponderance of the evidence:

First, the defendant Officer acted under color of state law; and

Second, the acts or failure to act of the defendant Officer deprived the decedent Mr. Adams of particular rights under the United States Constitution as explained in later instructions; and

Third, the defendant Officer's conduct was an actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that Defendant Officers Christopher Staup and Kyle Corrigan acted under color of state law.

The Defendant's conduct is an actual cause of a Plaintiff's and/or Decedent's injury only if the injury would not have occurred 'but for' that conduct, and the conduct has a sufficient connection to the result.

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements the plaintiff is required to prove under Instruction 29, your verdict should be for the plaintiff on that claim. If, on the other hand, the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant on that claim.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.3.

## 28. PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—EXCESSIVE FORCE

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force. Therefore, to establish an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

(1) the nature of the crime or other circumstances known to the officer at the time force was applied;

(2) for any less-lethal force, whether the decedent posed an immediate threat to the officer or to others;

(3) for any deadly force, whether the decedent posed immediate threat of death or serious bodily injury to the officers or to others;

(4) whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

(5) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(6) the relationship between the need for the use of force and the amount of force used;

(7) the extent of the decedent's injury;

(8) any effort made by the officer to temper or to limit the amount of force;

(9) the severity of the security problem at issue;

(10) the availability of alternative methods;

(11) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

(12) whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

(13) "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

The most important factor is whether the plaintiff posed an immediate threat to the officers or others (for non-deadly force) and/or whether the plaintiff posed an immediate threat of death or serious bodily injury to the officers or to others (for deadly force).

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.27 (*modified by 9th Cir. Comment*); *Mattos v. Agarano*, 661 F.3d 433, 441-42 (9th Cir. 2011) (prioritizing the factors of *Graham v. Connor*, 490 U.S. 386 (1989)); *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2011); *Hayes v. County of San Diego*, 57 Cal.4th 622, 637-639 (2013); *Gonzalez v. County of Los Angeles*, No. 2:18-CV-09117-ODW-ASX, 2021 WL 2224262, at *12 (C.D. Cal. June 2, 2021); *Andrews v. City of Henderson*, 35 F.4th 710, 719 (9th Cir. 2022).

## 30. BATTERY BY LAW ENFORCEMENT OFFICER (NONDEADLY FORCE)—ESSENTIAL FACTUAL ELEMENTS

Plaintiff claims that defendant Kyle Corrigan harmed decedent Jesse Adams by using unreasonable force. To establish this claim, plaintiff must prove all of the following:

1. That the defendant intentionally touched Jesse Adams;
2. That the defendant used unreasonable force on Jesse Adams;
3. That Jesse Adams did not consent to the use of that force;
4. That Jesse Adams was harmed; and
5. That defendant's use of unreasonable force was a substantial factor in causing Jesse Adams's harm.

An officer may use reasonable force to arrest a person when the officer has reasonable cause to believe that that person has committed a crime.

In deciding whether the defendant officer used unreasonable force, you must consider the totality of the circumstances and determine what amount of force a reasonable officer in the defendant officer's position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer at the time, including the conduct of the defendant officer and the plaintiff leading up to the use of force. You should consider, among other factors, the following:

(a) Whether the plaintiff reasonably appeared to pose an immediate threat to the safety of the defendant or others;

(b) The seriousness of the crime at issue; and

(c) Whether the plaintiff was actively resisting arrest or attempting to evade.

Tactical repositioning or other deescalation tactics are not retreat.

Source: CACI No. 1305A (2026 Edition).

## 31. BATTERY BY A PEACE OFFICER (DEADLY FORCE)—ESSENTIAL FACTUAL ELEMENTS

A peace officer may use deadly force only when necessary in defense of human life. Plaintiff claims that defendant Christopher Staup unnecessarily used deadly force on him. To establish this claim, Plaintiff must prove all of the following:

1. That the defendant intentionally shot Jesse Adams;
2. That the defendant used deadly force on Jesse Adams;
3. That the defendant's use of deadly force was not necessary to defend human life;
4. That Jesse Adams was harmed; and
5. That the defendant's use of deadly force was a substantial factor in causing Jesse Adams's harm.

The defendant's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by defendant at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to the defendant or another person.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to

immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the officer at the time, including the conduct of the defendant and plaintiff leading up to the use of deadly force. In determining whether the defendant's use of deadly force was necessary in defense of human life, you must consider the defendant's tactical conduct and decisions before using deadly force on Jesse Adams and whether the defendant used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to do so.

Tactical repositioning or other deescalation tactics are not retreat. A peace officer does, however, have a duty to use reasonable tactical repositioning or other deescalation tactics.

Source: CACI No. 1305B, (2026 Edition).

**32. NEGLIGENCE—BASIC STANDARD OF CARE**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in the defendants' and plaintiff's situation.

Source: CACI No. 401, (2026 Edition).

## 33. NEGLIGENT USE OF NONDEADLY FORCE BY LAW ENFORCEMENT OFFICER IN ARREST OR OTHER SEIZURE—ESSENTIAL FACTUAL ELEMENTS

A law enforcement officer may use reasonable force to arrest a person when the officer has reasonable cause to believe that that person has committed or is committing a crime. However, the officer may use only that degree of force necessary to arrest the person.

Plaintiff claims that defendant Kyle Corrigan was negligent in using unreasonable force to arrest. To establish this claim, plaintiff must prove all of the following:

1. That the defendant used force to arrest Jesse Adams;
2. That the amount of force used by the defendant was unreasonable;
3. That Jesse Adams was harmed; and
4. That the defendant's use of unreasonable force was a substantial factor in causing Jesse Adams's harm.

In deciding whether the defendant used unreasonable force, you must consider the totality of the circumstances to determine what amount of force a reasonable officer in the defendant's position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer at the time, including the conduct of the defendant and plaintiff leading up to the use of force. Among the factors to be considered are the following:

(a) Whether the plaintiff reasonably appeared to pose an immediate threat to the safety of the defendant or others;

(b) The seriousness of the crime at issue; and

(c) Whether plaintiff was actively resisting arrest or attempting to avoid arrest by flight; and

(d) The defendant's tactical conduct and decisions before using force on plaintiff.

Tactical repositioning or other deescalation tactics are not retreat.

Source: CACI No. 440 (2026 Edition).

## 34. NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER— ESSENTIAL FACTUAL ELEMENTS

A police officer may use deadly force only when necessary in defense of human life. Plaintiff claims that defendant Christopher Staup was negligent in using deadly force. To establish this claim, plaintiff must prove all of the following:

1. That the defendant was a peace officer;
2. That the defendant used deadly force on Jesse Adams;
3. That the defendant's use of deadly force was not necessary to defend human life;
4. That Jesse Adams was harmed; and
5. That the defendant's use of deadly force was a substantial factor in causing Jesse Adams's harm.

Defendant's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the defendant at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to the defendant or another person.

"Deadly force" is force that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of defendants and Jesse Adams leading up to the use of deadly force. In determining whether defendants use of deadly force was necessary in defense of human life, you must consider defendant Christopher Staup's tactical conduct and decisions before using deadly force on Jesse Adams and whether defendant officers used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

Tactical repositioning or other deescalation tactics are not retreat.

Source: CACI No. 441, (2026 Edition).

**35. NEGLIGENCE— COMPARATIVE FAULT OF DECEDENT**

The defendants claim that Jesse Adams' own negligence contributed to his harm. To succeed on this claim, the defendants must prove both of the following:

1. That Jesse Adams was negligent; and
2. That Jesse Adams's negligence was a substantial factor in causing his harm and death.

If defendants prove the above, Jesse Adams's damages are reduced by your determination of the percentage of Jesse Adams's responsibility. I will calculate the reduction.

Source: CACI No. 407, (2026 Edition).

**36. BANE ACT—ESSENTIAL FACTUAL ELEMENTS (CIV. CODE § 52.1)**

Plaintiff claims that defendants Christopher Staup and Kyle Corrigan violated the Bane Act. To establish this claim, Plaintiff must prove all of the following:

1. That the defendant used excessive force against Jesse Adams ;
2. That the defendant intended to deprive Jesse Adams of his right to be free from excessive force by acting with a reckless disregard to those rights;
3. That Jesse Adams was harmed; and
4. That the defendant's conduct was a substantial factor in causing Jesse Adams's harm.

Source: CACI No. 3066, (2026 Edition); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) (holding that section 52.1 does not require a showing of threats, intimidation and coercion separate from an underlying constitutional violation); *see also Cornell v. City and County of San Francisco*, 225 Cal. Rptr. 3d at 382-83 (2017) (holding that "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged" and "that the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1."); *Cornell*, 225 Cal. Rptr. 3d at 384 (holding that the Bane Act requires a specific intent to violate the arrestee's right to freedom from unreasonable seizure); *Reese*, 888 F.3d at 1045 (holding that a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights).

## 37. CAUSATION: SUBSTANTIAL FACTOR

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Source: CACI No. 430, (2026 Edition); Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.2; *see also Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989) (noting that federal courts turn to common law of torts for causation in civil rights cases).

**38. CAUSATION: MULTIPLE CAUSES**

A person's conduct may combine with another factor to cause harm. If you find that a defendant's conduct was a substantial factor in causing Jesse Adams's harm, then that defendant is responsible for the harm.

A defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Jesse Adams's harm.

Source: CACI No. 431, (2026 Edition); *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.2; *see also Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989) (noting that federal courts turn to common law of torts for causation in civil rights cases); *Jones v. Williams*, 297 F.3d 930, 937 n.6 (9th Cir. 2002) (regarding concurrent cause).

## 39. SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANT BASED ON OFFICIAL POLICY, PRACTICE, OR CUSTOM—ELEMENTS AND BURDEN OF PROOF

In order to prevail on their § 1983 claim against defendant City of Redding alleging liability based on an official policy, practice, or custom, the plaintiff must prove each of the following elements by a preponderance of the evidence:

First, the defendant Officers Christopher Staup or Kyle Corrigan acted under color of state law;

Second, the acts of the defendant Officers Christopher Staup or Kyle Corrigan deprived the decedent of particular rights under the United States Constitution as explained in Instruction No. 29;

Third, the defendant Officers Christopher Staup or Kyle Corrigan acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the defendant City of Redding; and

Fourth, the defendant City of Redding's official policy or widespread or longstanding practice or custom caused the deprivation of the decedent's rights by the defendant Officers Christopher Staup or Kyle Corrigan; that is, the City of Redding's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the decedent's rights as to be the moving force that caused the ultimate injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that defendants Christopher Staup and Kyle Corrigan acted under color of state law.

"Official policy" means a formal policy, such as a rule or regulation adopted by the defendant City of Redding, resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials

responsible for establishing final policy with respect to the subject matter in question.

"Practice or custom" means any longstanding, widespread, or well-settled practice or custom that constitutes a standard operating procedure of the defendant City of Redding. A practice or custom can be established by repeated constitutional violations that were not properly investigated and for which the violators were not disciplined, reprimanded or punished.

If you find that the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements the plaintiff is required to prove under Instruction No. 29, your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant City of Redding.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.5.

## 40. SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON RATIFICATION—ELEMENTS AND BURDEN OF PROOF

To prevail on the plaintiff's § 1983 claim against defendant City of Redding alleging liability based on ratification by a final policymaker, the plaintiff must prove each of the following elements by a preponderance of the evidence:

First, a final policymaker acted under color of state law;

Second, the acts and/or failure to act of the defendant officers deprived the plaintiff of particular rights under the United States Constitution as explained in Instruction No. 29;

Third, the final policymaker acted under color of state law;

Fourth, the final policymaker had final policymaking authority from defendant City of Redding concerning the acts and/or failure to act of the defendant officers; and

Fifth, the final policymaker ratified the defendant Christopher Staup or Kyle Corrigan's acts and/or failure to act, that is, the final policymaker knew of and specifically made a deliberate choice to approve the defendant officer's acts and/or failure to act and the basis for it.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance, or regulation. The parties have stipulated that the defendants Christopher Staup and Kyle Corrigan acted under color of state law.

I instruct you that the final policymaker had final policymaking authority from defendant City of Redding concerning the acts at issue and, therefore, the fourth element requires no proof.

If you find that the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements the plaintiff is required to prove under Instruction No. 29, your verdict should be for the plaintiff. If, on the other hand, the

plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant City of Redding.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.7.

**41. SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON A POLICY THAT FAILS TO PREVENT VIOLATIONS OF LAW OR A POLICY OF FAILURE TO TRAIN—ELEMENTS AND BURDEN OF PROOF**

To prevail on the plaintiff's § 1983 claim against defendant City of Redding alleging liability based on a policy that fails to prevent violations of law by its and/or of a failure to train its officers, the plaintiff must prove each of the following elements by a preponderance of the evidence:

First, the acts and/or failure to act of the defendant Officers Christopher Staup or Kyle Corrigan deprived decedent of his particular rights under the United States Constitution as explained in Instruction No. 29;

Second, the defendant Officers Christopher Staup or Kyle Corrigan acted under color of state law;

Third, the training policies of the defendant City of Redding were not adequate to prevent violations of law by its employees or to train its officers to handle the usual and recurring situations with which they must deal;

Fourth, the defendant City of Redding was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees or known or obvious consequences of its failure to train its officers adequately; and

Fifth, the failure of the defendant City of Redding to prevent violations of law by its employees or to provide adequate training caused the deprivation of decedent's rights by the defendant officer's; that is, defendant City of Redding's failure to prevent violations of law by its employees or to train played a substantial part in bringing about or actually causing the injury or damage to decedent.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law,

ordinance or regulation. The parties have stipulated that the defendants Christopher Staup and Kyle Corrigan acted under color of state law.

A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. A policy of inaction or omission may be based on a failure to implement procedural safeguards to prevent constitutional violations. To establish that there is a policy based on a failure to preserve constitutional rights, plaintiff must show, in addition to a constitutional violation, that this policy amounts to deliberate indifference to decedent's constitutional rights, and that the policy caused the violation, in the sense that the municipality could have prevented the violation with an appropriate policy.

"Deliberate indifference" is the conscious choice to disregard a known or obvious consequences of one's acts or omissions. Plaintiff may prove deliberate indifference in this case by showing that the facts available to defendant City of Redding put it on actual or constructive notice that its failure to implement adequate policies or failure to train adequately was substantially certain to result in the violation of the constitutional rights of persons such as decedent due to officer's conduct.

If you find that plaintiff has proved each of these elements, and if you find that plaintiff has proved all the elements plaintiff is required to prove under Instruction No. 29, your verdict should be for plaintiff. If, on the other hand, plaintiff has failed to prove any one or more of these elements, your verdict should be for defendant City of Redding.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 9.8.

**42. PLAINTIFF'S DAMAGES (Wrongful Death)**

In addition to determining any of Plaintiff's other damages, if you decide that Plaintiff has proved her claims against Defendants, you also must decide how much money will reasonably compensate Plaintiff Cindy Adams for the loss of her son Jesse Adams and for violations of their rights. Plaintiff does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

Plaintiff claims the following economic damages for the loss of her son Jesse Adams and the violation of their rights:

1. The financial support, if any, that Mr. Adams would have contributed to Plaintiff during Plaintiff's life expectancy;
2. The loss of gifts or benefits that Plaintiff would have expected to receive from Mr. Adams;
3. Funeral and burial expenses; and
4. The reasonable value of household services that Mr. Adams would have provided.

Your award of any future economic damages must be reduced to present cash value.

Plaintiff also claims the following noneconomic damages:

1. The loss of Mr. Adams' love, companionship, comfort, care, assistance, protection, affection, society, moral support; and
2. The loss of Mr. Adams' training and guidance.

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 5.1 and 5.2; CACI 3900, 3902, 3903A, 3905, 3921, 3922 (2026 Edition).

**43. DECEDENT'S DAMAGES (Survival Damages)**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on any of the plaintiff's claims, in addition to Plaintiff's damages, you must determine decedent Jesse Adams' damages that were sustained before death that he would have been entitled to recover because of Defendants' conduct. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages reasonable and fair compensation for any injury you find was caused by the Defendants.

You should consider the following as to Mr. Adams' damages:

1. The nature and extent of Jesse Adams' injuries;
2. The mental, physical, and emotional pain and suffering that Mr. Adams' experienced prior to his death;
3. Loss of life; and
4. Loss of enjoyment of life.

It is for you to determine what damages, if any, have been proved.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 5.1 and 5.2; CACI 3900, 3905A, (2026 Edition) (*modified*).

**44. PREDICATE QUESTION FOR PUNITIVE DAMAGES:**

If you find for a plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish defendant Christopher Staup or Kyle Corrigan and to deter similar acts in the future. Punitive damages may not be awarded to compensate the plaintiff or decedent.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded.

You may award punitive damages only if you find that the defendant's conduct that harmed the decedent was malicious, oppressive or in reckless disregard of a decedent's rights.

Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring a decedent.

Conduct is in reckless disregard of the decedent's rights if, under the circumstances, it reflects complete indifference to the decedent's safety or rights, or if the defendant acts in the face of a perceived risk that his or her actions will violate the decedent's rights under federal law.

An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the decedent with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the decedent.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 5.5 (*modified*).

**45. PUNITIVE DAMAGES – CALCULATION:**

You have found for the plaintiff that defendant Christopher Staup, Kyle Corrigan or Edward McGinnis's conduct that harmed the decedent was malicious, oppressive or in reckless disregard of the decedent's rights. Now you must determine the amount of punitive damages to award plaintiff. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff or decedent.

The plaintiff has the burden of proving by a preponderance of the evidence the amount of any such damages.

You must use reason in setting the amount of punitive damages. Punitive damages should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct , including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the decedent.

Punitive damages may not be awarded against the City of Redding.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2025 Edition), Instruction 5.5 (*modified*).